**UNITED STATES of America, Appellee,**

v.

**Robert Lee LOOPER, Appellant.**

**No. 13491.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 4, 1969.

Decided Dec. 12, 1969.

George S. Daly, Jr., Charlotte, N. C. (Ralph K. Helge, on brief), for appellant.

Joseph R. Cruciani, Asst. U. S. Atty. (Keith S. Snyder, U. S. Atty., on brief), for appellee.

Before SOBELOFF, WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

Convicted of failure to submit to induction into the armed forces of the United States in violation of 50 U.S.C.A. App. § 462 and sentenced to two years' imprisonment, defendant, a member of the Radio Church of God and an asserted conscientious objector, appeals. He raises numerous grounds on which he claims that the judgment of the district court should be reversed. We reach and consider only one—the ruling that defendant not be permitted to testify in his

own defense because he refused on account of his religious beliefs to take the oath or affirmation prescribed by the court. Finding error in that ruling, we reverse and award a new trial.

At the conclusion of the government's case, and after denial of a motion for acquittal, defense counsel advised the court that defendant had two witnesses, of which defendant was one. In response to this statement, the district judge directed that both be brought forward and sworn simultaneously. The transcript shows that "the Clerk administered the affirmation at the request of the witnesses." [1] Its text is not set forth. Defendant immediately replied, "I can't do that," and when told by the district judge, "you're going to take an oath or affirm," defendant answered, "I can't if it has God's name in it. If you ask me if I'll tell the truth, I can say that."

The district judge rejected defendant's offer because "that's not the oath," and a discussion between the district judge and counsel ensued. Finally, the district judge said that defendant could "put his hand on the Bible and hold up his right hand and appeal to God." Defendant replied, "I can't hold up my hand, Judge," whereupon the district judge declined to let him testify. What happened to the other defense witness is not clear. He did not join in the colloquy with the district judge, and he did not testify.

The ancient incompetency of a defendant to testify in his own behalf has been completely altered in the modern era. The right to testify has been described as a constitutional right, Poe v. United States, 233 F.Supp. 173 (D.D.C.1964).

Certainly, in a federal court, it is not less than a statutory right, and it may not be denied a defendant if, being advised, he elects to exercise it. 18 U.S.C.A. § 3481. The taking of testimony of all witnesses in a criminal case, including the exercise of the privilege by a defendant, is governed by Rule 26, F.R.Crim.P. This rule states that, except when an act of Congress or the criminal rules otherwise provide, "[t]he admissibility of evidence and the competency and privileges of witnesses shall be governed * * * by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

The concept of testimonial qualification formalized in Rule 26 is treated in Moore v. United States, 348 U.S. 966, 75 S.Ct. 530, 99 L.Ed. 753 (1955), which reversed, per curiam, a holding that the testimony of a defendant who was a member of the Harshmanite Church was properly refused when he declined to use the word "solemnly" in affirming to tell the truth. The Court stated succinctly, "[t]here is no requirement that the word 'solemnly' be used in the affirmation * * *."

Wigmore's views on the subject are in agreement with *Moore*. Wigmore states that the modern theory of a witness' oath is the subjective one of impressing on his conscience the necessity for speaking the truth. "[I]t follows that the *form* of the administration of the oath *is immaterial*, provided that it involves, in the mind of the witness, the bringing to bear of this apprehension of punishment." VI Wigmore, Evidence, § 1818.[2]

---

1. For the government's witnesses, the transcript shows that before testifying each was "first duly sworn."

2. In the course of the development of the common law the rationale of the oath was to invoke the belief as to divine retribution to follow false swearing as an inducement to tell the truth. The earlier cases emphasized the necessity for belief in immediate punishment, i. e., the witness' being struck down by divine punishment as he was testifying or some

punishment in the present life, but eventually the belief of punishment in the life to come was deemed sufficient. This rationale is, of course, predicated on belief in a Supreme Being with power to visit immediate or prospective punishment. It would exclude as a witness one who was an atheist or an agnostic. Although as late as Torcaso v. Watkins, 223 Md. 49, 162 A.2d 438 (1960), the view was expressed that an atheist would be incompetent to testify, the modern authorities find little difficulty in extending the

On the authority of Moore v. United States, and Wigmore, we conclude that the district judge committed reversible error. The common law, as made applicable by Rule 26, requires neither an appeal to God nor the raising of a hand as a prerequisite to a valid oath. All that the common law requires is a form or statement which impresses upon the mind and conscience of a witness the necessity for telling the truth.[3] Thus, defendant's privilege to testify may not be denied him solely because he would not accede to a form of oath or affirmation not required by the common law.

If defendant's religious beliefs made repugnant or impossible to him an appeal to God or the raising of a hand as part of an oath or affirmation (and in this regard, his statement was to be believed), all the district judge need do is to make inquiry as to what form of oath or affirmation would not offend defendant's religious beliefs but would give rise to a duty to speak the truth. The district judge could qualify defendant to testify in any form which stated or symbolized that defendant would tell the truth and which, under defendant's religious beliefs, purported to impress on him the necessity for so doing.[4]

Our disposition of this appeal on this limited ground shall not foreclose defendant from reasserting as defenses in any new trial any of the other contentions which he has pressed upon us.

Reversed and remanded, new trial granted.

---

rationale to atheists and agnostics so as to render them competent witnesses. The incentive to tell the truth, it is suggested, may be the mental anguish or loss of self-respect which would follow the telling of an untruth. To this may be added the possibility of prosecution and punishment for perjury. See generally VI Wigmore, Evidence, §§ 1816–1817 (1940 Ed. and 1964 Supp.). See also n. 3, *infra.*

3. The rule is best stated in the Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, March, 1969, Rule 6–03 Oath or Affirmation, where it is said:
"Before testifying, every witness shall be required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his mind with his duty to do so."
In explanation of this portion of the draft the Advisory Committee's Note reads:
ADVISORY COMMITTEE'S NOTE

"The rule is designed to afford the flexibility required in dealing with religious adults, atheists, conscientious objectors, mental defectives, and children. Affirmation is simply a solemn undertaking to tell the truth; no special verbal formula is required. As is true generally, affirmation is recognized by federal law. 'Oath' includes affirmation, 1 U.S.C. § 1; judges and clerks may administer oaths and affirmations, 28 U.S.C. §§ 459, 953; and affirmations are acceptable in lieu of oaths under Rule 43(d) of the Federal Rules of Civil Procedure. Perjury by a witness is a crime, 18 U.S.C. § 1621.

4. With the sophistication derived from England's role as a world trader, its courts have permitted Chinese to break a saucer, a Mohammedan to bow before the Koran and touch it to his head and a Parsee to tie a rope around his waist to qualify them to tell the truth. VI Wigmore, Evidence, § 1818.