**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Wallace WARD, Defendant–Appellant.**

**No. 91–10293.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 11, 1992.

Decided Aug. 19, 1992.

As Amended; No Petition for Rehearing Entertained April 1, 1993.

---

Wallace Ward, in pro per.

Robert Bork, Asst. U.S. Atty., Las Vegas, NV, for plaintiff-appellee.

Before FLETCHER, POOLE and T.G. NELSON, Circuit Judges.

FLETCHER, Circuit Judge:

Wallace Ward appeals his conviction of three counts of attempt to evade income tax in violation of 26 U.S.C. § 7201 and three counts of failure to file income taxes in violation of 26 U.S.C. § 7203. Ward argues that a new trial is necessary because the district court did not allow him to swear to an oath of his own creation, there-

by precluding him from testifying in his own defense. We reverse and remand for a new trial.

## BACKGROUND

Ward is the president of I & O Publishing Company, a mail-order house and publisher located in Boulder City, Nevada. The prosecution presented evidence at trial that despite having substantial income, neither I & O nor Ward filed tax returns or paid income taxes for the years 1983, 1984 and 1985.

On March 29, 1990 a grand jury indicted Ward on three counts each of tax evasion and failure to file income tax returns. Ward chose to represent himself at trial. On July 9, 1990, Ward filed a "Motion to Challenge the Oath," which proposed an alternative oath that replaced the word "truth" with the phrase "fully integrated Honesty." The oath would read, "Do you affirm to speak with fully integrated Honesty, only with fully integrated Honesty and nothing but fully integrated Honesty?" For reasons we will not attempt to explain, Ward believes that honesty is superior to truth. Magistrate Lawrence R. Leavitt ruled on August 2, 1990 that "the oath or affirmation which has been administered in courts of law throughout the United States to millions of witnesses for hundreds of years should not be required to give way to the defendant's idiosyncratic distinctions between truth and honesty." The district court overruled Ward's objections to the magistrate's order on August 28, 1990, and again on October 8, 1990. Ward pursued an interlocutory appeal on the issue, which was dismissed for lack of jurisdiction. *United States v. Ward*, No. 90–10534 (9th Cir. April 24, 1991).

A three-day trial commenced on February 11, 1991. Ward made a lengthy opening statement and actively cross-examined government witnesses. At a sidebar during the second day of trial, Ward offered to take both the standard oath and his oath. The prosecutor was amenable to the compromise, but the district court refused to allow it. "This is an oath that has been used for a very long time," the district court said, "And I'm not going to establish a precedent where someone can come in and require the court to address that matter differently." At the close of the government's case on the third day of trial, Ward asked once again to testify under his oath. The judge again refused, saying "[T]he oath has been used for a very long time.... That's the oath that will be administered." Ward did not testify and presented no witnesses. The jury convicted Ward of all counts after an hour's deliberation.

Ward now appeals. He argues that the district court's insistence on an oath that violated his beliefs abridged his First Amendment right to free exercise of religion and his Fifth Amendment right to testify in his own defense.

## DISCUSSION

■ Questions of trial management are ordinarily reviewed for abuse of discretion. *United States v. Goode*, 814 F.2d 1353, 1354 (9th Cir.1987). However, this case turns on the defendant's First and Fifth Amendment rights. We review questions of constitutional law *de novo*. *United States v. McConney*, 728 F.2d 1195, 1203 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ Judges may not determine the truth or falsity of matters of faith. Even so, we must determine as a threshold matter whether Ward's beliefs are within the ambit of the First Amendment. In order for Ward to invoke "the protection of the Religion Clauses, [his] claims must be rooted in religious belief." *Wisconsin v. Yoder*, 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972).

But what is a religious belief? That is the question. In describing "the richness and variety of spiritual life in our country," the Supreme Court has noted that some of the more than 250 sects in the United States "believe in a purely personal God, some in a supernatural deity; others think

of religion as a way of life envisioning as its ultimate goal the day when all men can live together in perfect understanding and peace." *United States v. Seeger*, 380 U.S. 163, 174, 85 S.Ct. 850, 858, 13 L.Ed.2d 733 (1965). "There are those," the Court continued, "who think of God as the depth of our being; others, such as the Buddhists, strive for a state of lasting rest through self-denial and inner purification; in Hindu philosophy, the Supreme Being is the transcendental reality which is truth, knowledge and bliss." *Id.* at 174–75, 85 S.Ct. at 858. In short, the religious fabric of this country is one of a "vast panoply of beliefs." *Id.* at 175, 85 S.Ct. at 859.

■ In determining whether Ward's own peculiar notions [1] are protected as religious beliefs, "[the] task is to decide whether the beliefs professed ... are sincerely held and whether they are, in [Ward's] own scheme of things, religious." *Id.* at 185, 85 S.Ct. at 863; *see also Welsh v. United States*, 398 U.S. 333, 339, 90 S.Ct. 1792, 1796, 26 L.Ed.2d 308 (1970) (quoting same language in *Seeger*). "Religious" beliefs, then, are those that stem from a person's "moral, ethical, or religious beliefs about what is right and wrong" and are "held with the strength of traditional religious convictions." *Welsh*, 398 U.S. at 340, 90 S.Ct. at 1796.[2] While there can be no question that a "purely secular philosophical concern[ ]," *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir.1981), is not encompassed by the free

exercise clause, we conclude that the "generous functional (and even idiosyncratic) definition [of religion and religious beliefs in the] free exercise [context]," *Grove v. Mead School District*, 753 F.2d 1528, 1537 (9th Cir.) (Canby, J., concurring), *cert. denied*, 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70 (1985), includes Ward's system of principles.[3]

To the extent that the free exercise clause does not protect "so-called religions which ... are obviously shams and absurdities and whose members are patently devoid of religious sincerity," *Callahan*, 658 F.2d at 683 (internal quotation marks omitted), the focus of the judicial inquiry is not definitional, but rather devotional. *Id.* That is, is Ward sincere? Are his beliefs held with the strength of traditional religious convictions? Ward does not describe his beliefs in terms ordinarily used in discussions of theology or cosmology (although he at one point uses the term "atheistic"), but he clearly attempts to express a moral or ethical sense of right and wrong. Ward's actions are evidence of the strength of his beliefs. He strongly professes innocence of the crimes charged, yet he preferred to risk conviction and incarceration rather than abandon his version of the oath. Compelling him to testify under the "truth" oath would, he says, "profoundly violate" his "freedom of belief" and run counter to the "convictions that are the

1. The peculiarity or uniqueness of Ward's creed is irrelevant; "[a] religious belief can appear to every other member of the human race preposterous, yet merit the protections of the Bill of Rights." *Stevens v. Berger*, 428 F.Supp. 896, 899 (E.D.N.Y.1977), *cited in Callahan v. Woods*, 658 F.2d 679, 685 (9th Cir.1981).

2. We recognize that the *Welsh* test was propounded by a four-justice plurality in the context of construing the statutory term "religious training and belief" as it appears in the conscientious objector exception to the Selective Service Act. However, Justice Harlan's concurrence adopted the plurality's test as a matter of constitutional interpretation. 398 U.S. at 345, 356–61, 90 S.Ct. at 1799, 1804–08 (Harlan, J., concurring). Courts regularly use the *Welsh* test to determine whether belief is "religious" for First Amendment free exercise purposes. *See Mozert v. Hawkins County Board of Education*, 827 F.2d 1058, 1078 (6th Cir.1987), *cert.*

*denied*, 484 U.S. 1066, 108 S.Ct. 1029, 98 L.Ed.2d 993 (1988); *Grove v. Mead School District*, 753 F.2d 1528, 1537 (9th Cir.) (Canby, J., concurring), *cert. denied*, 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70 (1985); *International Society for Krishna Consciousness, Inc. v. Barber*, 650 F.2d 430, 440 (2nd Cir.1981); *See also Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025, 1031–32 (3rd Cir.1981) (refinement of *Welsh* test), *cert. denied*, 456 U.S. 908, 102 S.Ct. 1756, 72 L.Ed.2d 165 (1982).

3. Ward believes that the utilization of "a higher standard than truth" is, in his words, "a powerful, legitimate tool to protect society from dishonest and destructive people...." This notion is quite like one of the *Seeger* examples—"others think of religion as a way of life envisioning as its ultimate goal the day when all men can live together in perfect understanding and peace." *Seeger*, 380 U.S. at 174, 85 S.Ct. at 858.

central theme of all his published books and writings for the past 22 years." This is the sincerity of true religious conviction. We conclude that Ward professes beliefs that are protected by the First Amendment.

■ The court's interest in administering its precise form of oath must yield to Ward's First Amendment rights. To begin with, there is no constitutionally or statutorily required form of oath. Federal Rule of Evidence 603 requires only that a witness "declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so." The advisory committee notes to Rule 603 explain that "the rule is designed to afford the flexibility required in dealing with religious adults, atheists, conscientious objectors, mental defectives, and children. Affirmation is simply a solemn undertaking to tell the truth; no special verbal formula is required." This rule represents no break with the common law, which recognized that

> the oath's efficacy may depend upon both the general name and nature of the witness' faith and the formula of words or ceremonies which he considers as binding, i.e., as subjecting him to the risk of punishment. But it cannot matter what tenets of theological belief or what ecclesiastical organization he adheres to, provided the above essentials are fulfilled, and it *cannot matter what words or ceremonies are used* in imposing the oath, provided he recognizes them as binding by his belief.

6 Wigmore, Evidence § 1818 (Chadbourne rev.1976) (original emphasis).

■ Our cases have routinely held that it is reversible error for a district court to prevent a party from testifying solely on the basis of the party's religiously-based objections to the form of the oath. In *Gordon v. State of Idaho*, 778 F.2d 1397 (9th Cir.1985), a plaintiff in a § 1983 action professed religious objections to oath or affirmation, offering instead to say "I understand that I must tell the truth. I agree to testify under penalty of perjury." Using First Amendment analysis requiring that government use the "least restrictive means" to its ends when free exercise is at stake, we held that it was an abuse of discretion for the district court to insist upon the standard oath and to dismiss plaintiff's case for failure to present evidence. *See also Ferguson v. C.I.R.*, 921 F.2d 588 (5th Cir.1991) (tax court proceeding, similar facts). Criminal trials additionally implicate the defendant's Fifth Amendment right to testify.

> All that the common law requires is a form or statement which impresses upon the mind and conscience of a witness the necessity for telling the truth. Thus, defendant's privilege to testify may not be denied him solely because he would not accede to a form of oath or affirmation not required by the common law.... [A]ll the district judge need do is to make inquiry as to what form of oath or affirmation would not offend defendant's religious beliefs but would give rise to a duty to speak the truth.

*United States v. Looper*, 419 F.2d 1405, 1407 (4th Cir.1969). *See also Moore v. United States*, 348 U.S. 966, 75 S.Ct. 530, 99 L.Ed. 753 (1955) (per curiam) (criminal defendant with religious objections to the word "solemnly" in the oath must be allowed to testify).

Neither the magistrate nor the district court cited to any of these authorities, relying instead on their perception that the standard oath had not changed "for hundreds of years." While oaths including the familiar "truth, whole truth, and nothing but the truth" formulation date back at least to the seventeenth century, *see* 6 Wigmore, Evidence § 1818(2) (Chadbourne rev. 1976), the principle that the form of the oath must be crafted in a way that is meaningful to the witness also predates our constitution. In *Omichund v. Barker*, 1 Atk. 22, 45 (1744), Lord Chief Judge Willes wrote, "It would be absurd for [a non-Christian witness] to swear according to the Christian oath, which he does not believe; and therefore, out of necessity, he must be allowed to swear according to his

own notion of an oath." *See also Atcheson v. Everitt*, 1 Cowp. 382, 389 (1776) (Mansfield, L.C.J.) ("[A]s the purpose of [the oath] is to bind his conscience, every man of every religion should be bound by that form which he himself thinks will bind his own conscience most").

This case has an odd twist in that the defendant offered to take the traditional "truth" oath, but only if he were permitted to also take his "fully integrated honesty" oath. In Ward's view, as best we can state it, only his oath expressed a commitment to the abstract purity of absolute "fully integrated honesty" that must be extracted from anyone before that person's word can be relied upon. The standard "truth" oath was so much surplusage—distasteful, wrong, but not necessarily a mortal sin to take.

■■■ His own oath superimposed on the traditional one would have taken nothing away from the commitment to tell the truth under penalties of perjury and, indeed, in the defendant's mind imposed upon him a higher duty.[4] Under these circumstances the district court clearly abused its discretion in refusing the oath and preventing the defendant's testimony. We do not have a case where the witness offers to swear only to a cleverly worded oath that creates loopholes for falsehood or attempts to create a safe harbor for perjury as in *United States v. Fowler*, 605 F.2d 181, 185 (5th Cir.1979), *cert. denied*, 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 785 (1980), where the court properly refused testimony from a defendant who would not say so much as "I state that I will tell the truth in my testimony," and was willing to say only "I am a truthful man" or "I would not tell a lie to stay out of jail." Ward's "attempt[ ] to express a moral or ethical sense

of right and wrong," *Welsh*, 398 U.S. at 340, 90 S.Ct. at 1796, coupled with the de rigueur fervor, brings his beliefs squarely within those safeguarded by the free exercise clause.

■■■ Ward also seeks to vindicate what he perceives to be his right to have all his witnesses sworn to his oath. This he cannot do. Ward has no standing to assert the First or Fifth Amendment rights of others. *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 (9th Cir.1987). Ward also alleges numerous trial errors which we need not consider in light of our grant of a new trial.

REVERSED and REMANDED.

POOLE, Circuit Judge, dissenting:

The majority seizes upon the defendant's semantic objection to the word "truth" and concomitant preference for the term "honesty" to reverse a conviction, but this result is not commanded by the Free Exercise Clause and runs afoul of the rule that any oath taken must convince the court that a witness is committed to truthful testimony and is aware of the cost of dishonesty on the stand. I would hold that the district court did not abuse its discretion in failing to provide a customized oath for Ward.

It is axiomatic that even the most sincere of beliefs is not entitled to the protection of the Free Exercise clause unless it is rooted in religion. *See, e.g., Thomas v. Review Board*, 450 U.S. 707, 713, 101 S.Ct. 1425, 1429, 67 L.Ed.2d 624 (1981); *Wisconsin v. Yoder*, 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972). We do not require a belief in God, but we do require a belief to "occup[y] a place in the life of its possessor parallel to that filled by the or-

---

**4.** We do not find compelling any contention that the beliefs of another individual of Ward's general convictions might be worthy of protection so long as that individual refused the "truth" oath altogether, while Ward's own particular creed, clearly less pure (as demonstrated by his grudging willingness to compromise), would not be protected. That argument is grounded in the notion that if Ward were truly and sincerely committed to fully integrated honesty, he would steadfastly refuse to have any-

thing to do with the "truth" oath and would not consider for one moment uttering those hateful words. It is not within the court's " 'function or ... competence' " to inquire whether Ward or the zealot " 'more correctly perceived' " the particular religious wisdom in issue. *Callahan*, 658 F.2d at 686 (quoting *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 716, 101 S.Ct. 1425, 1431, 67 L.Ed.2d 624 (1981)).

thodox belief in God." *Mason v. General Brown Central School Dist.,* 851 F.2d 47, 51 (2d Cir.1988). A "purely secular philosophical concern" is not enough to override the state's interest in uniform regulation. *Callahan v. Woods,* 658 F.2d 679, 683 (9th Cir.1981); *see also Johnson v. Moore,* 948 F.2d 517, 520 (9th Cir.1991).

I believe that Ward's objection to the oath ordinarily required of witnesses by Fed.R.Evid. 603 amounts to nothing more than a philosophical predilection. Ward does not tell us how his concerns about the misuse of the word "truth" affects his ability to cope with the pressures and challenges of his daily life. He does not enlighten us as to how habitual application of the term "honesty" provides him spiritual growth, relates to his understanding of life's purpose and meaning, or guides his daily routine. He does tell us that "honesty" means that all of the world's problems will disappear because then we will all know people are not lying, but I fail to see how this prediction satisfies the requirement that Ward's preference for a particular word be as important, or even as relevant, as religion is in the lives of many people.

Even were I to give Ward the benefit of the doubt and ascribe religious significance to his "ultimate concern" with the merits of the word "honesty," I would still decline to require the district court to accommodate his objection. The district court must modify the oath to reflect genuinely held objections to it, but the court must also satisfy itself that the witness has committed himself to speak the truth. It is not enough that the witness says he knows of his obligation to do so; there must be a promise based on the awareness that failure to be honest is punishable under our law. *See United States v. Looper,* 419 F.2d 1405, 1407 (4th Cir.1969); *Wilcoxon v. United States,* 231 F.2d 384, 387 (10th Cir. 1956), *cert. denied,* 351 U.S. 943, 76 S.Ct. 834, 100 L.Ed. 1469 (1957); *Gordon v. State of Idaho,* 778 F.2d 1397, 1401 n. 2 (9th Cir.1985) (Weigel, J., dissenting). Ward's proposed alternative oath does not contain an acknowledgment of the *duty* to speak truthfully and does not ensure that

the defendant is aware of the cost of dishonesty.

The majority's accommodation of Ward's "purely secular philosophical concerns," *Callahan,* 658 F.2d at 683, will result not in protection of a valuable Constitutional right but in numerous wasteful and time-consuming attacks on the oath mandated as a means of guaranteeing truth and of expediting the administration of justice. I dissent.