**Richard SCOTT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–01–169–CR.**

Court of Appeals of Texas, Waco.

June 12, 2002.

Rehearing Overruled July 17, 2002.

Discretionary Review Refused Oct. 2, 2002.

---

Richard Scott, Hamilton, pro se.

B.J. Shepherd, Hamilton County Dist. Atty., Martin L. Peterson, Hamilton County Asst. Dist. Atty., Meridian, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

This appeal involves Richard Scott's assertion of indigence on appeal, his right to a free appellate record, and his right to court-appointed counsel. The trial court refused to find Scott indigent because: (1) it did not have before it a pleading requesting such a finding; and (2) Scott and his witnesses refused to provide testimony "under penalty of perjury," stating that to do so would be contrary to their religious

beliefs. We will reverse and remand this cause for further proceedings.

## BACKGROUND

A grand jury presented an indictment against Scott on June 26, 2000 charging him with securing the execution of a document by deception. Throughout the course of the proceedings in the court below, Scott filed numerous pleadings asserting that he is indigent and that he is unwilling to provide testimony under "oath" or "affirmation" due to his religious beliefs.

On July 12, Scott filed a "Motion to Proceed Impecuniously" in which he sought leave of the trial court to proceed without payment of costs "in regard to the costs of process, evidence, copying, trial transcripts, and all other related and assorted expenses of prosecuting his defense." Scott concluded this motion with the following statement:

> Due to petitioner's sincerely and truly held religious training and belief against taking, swearing or affirming any oath, whether or not under penalties of perjury, or the giving of any affidavit by swearing of affirming an oath, the following witnesses who hold to the same religious beliefs as himself and are of lawful age, do hereby verify the truth and accuracy of all that has been related herein, and as first-hand witnesses to all proceedings in this matter to date.

Scott filed a request that the court provide him funds to hire counsel of his choice on July 14. Scott based this request on his alleged indigence and concluded it with the verification quoted above.

On August 23, Scott filed a "Notice and Demand for Flexibility of Rules to Secure the Free Exercise of Religious Beliefs and Practices" in which he stated:

> "The Defendant hereby gives this **NOTICE** and **DEMAND** that this court, in the above-numbered cause, interpret and apply its local and State of Texas rules, regarding Oaths and Affirmations, in a manner of flexibility that is consistent with this court's Constitutional obligations to secure the free exercise of religious beliefs, under the First Article of the Bill of Rights, of the Constitution for the united [sic] States of America, and its companion clause in the Texas Constitution."

Scott supported this notice with an "As If 'Affidavit'" setting forth supporting biblical and legal authorities. He concluded this "affidavit" with the same verification quoted above.

A jury convicted Scott of the offense charged and assessed his punishment at one year in a state jail facility and a $2,000 fine. The court imposed sentence on February 26, 2001. Scott filed his notice of appeal the same day. We docketed Scott's appeal of the conviction under cause number 10–01–077–CR.

Scott filed requests for preparation of the clerk's record and the reporter's record with the district clerk on the thirtieth day after imposition of sentence. He requested that both records be prepared and filed in this Court without charge because of his alleged indigence. Scott stated in the request for the clerk's record that he was entitled to a free appellate record "since Appellant is indigent and has requested to proceed *in forma pauperis*."

On March 9, Scott filed a "Motion to Proceed Impecuniously" with the Clerk of this Court. We denied this motion on May 2 because he filed it with the wrong court.

At Scott's request, the trial court held a hearing on his "Motions to Proceed Impecuniously" on May 15. Scott called his first witness, who informed the court that he would not testify under "oath" or "affir-

mation" because of his religious beliefs. The court refused to allow him to testify. The same happened with Scott's second witness. Scott then called his mother-in-law Arveta Dark to testify, because she was willing to testify under oath. After she testified for some period of time, the judge informed Scott that he could not find a copy of Scott's March 2001 indigence motion in the file.

Scott asked the court to allow him to proceed on the July 2000 indigence motion. Initially, the court agreed. After Dark answered two further questions however, the court stopped the proceedings and informed Scott that the July 2000 motion was "totally insufficient." Scott then attempted to make an oral motion "to proceed impecuniously." The court asked Scott to provide testimony under oath and the following exchange occurred:

Scott: Due to my sincerely and truly held religious beliefs and convictions, I am precluded from swearing or affirming under oath, Your Honor, but I will state for and on the record that I vow to my heavenly Creator that I will tell the truth and that I will do so under any penalties that are equivalent to the penalties for perjury for those who swear or affirm oaths.

Court: I want you to go ahead and say you will do it under the penalties of perjury. If you'd do that, I'm fixing to let you testify.

Scott: Well, I have a problem with the word perjury itself as being relating to swearing or affirming an oath, Your Honor, but I will do so under any penalty that is equivalent thereto.

Court: What penalty do you suppose that's equivalent thereto, Mr. Scott—

Scott: Well, Your Honor—

Court:—perjury is—it's either perjury or it's not.

Scott: I assume that it's any penalty that could be invoked for not telling the truth and for—you know, telling a lie or a misrepresentation.

Court: You—you're not going to get to split that hair with me, Mr. Scott. It's either going to be perjury or not. If you'll do—if you'll—if you'll affirm under the penalty of perjury I am perfectly willing to hear your testimony.

This exchange continued briefly before the judge stated again that he would not "split that hair" with Scott. Scott objected on First Amendment grounds.

Scott then asked the court to appoint counsel to represent him "because I cannot afford that and have no way to pay for that." The court did not rule on this request.

The court signed the following order on May 29:

> On the 15th day of May, 2001, came on to be heard the motion of Defendant for appointment of counsel. After hearing the evidence, the court finds that Defendant has not completed under oath a questionnaire concerning his financial resources nor did he respond under oath to an examination regarding his financial resources nor did he sign under oath a certification that he was without means to employ counsel of his own choosing and further finds that the evidence presented was insufficient to show that Defendant is indigent at this time.
>
> Accordingly, the court finds it cannot properly determine whether Defendant is indigent or entitled to assistance of counsel at public expense and declines to appoint an attorney for Defendant, without prejudice.

**FREE APPELLATE RECORD**

Scott's first issue challenges the court's refusal to allow his witnesses or him to

testify regarding his indigence. He contends that this resulted in the denial of his right to a free appellate record. The State responds that no error is shown because Scott did not file a timely affidavit of indigence.

### PERTINENT AUTHORITIES

■ An indigent criminal defendant has a constitutional right to a free appellate record in a first appeal of right. *See Griffin v. Illinois*, 351 U.S. 12, 18–19, 76 S.Ct. 585, 590–91, 100 L.Ed. 891, 899 (1956); *Abdnor v. State*, 712 S.W.2d 136, 139 (Tex. Crim.App.1986). Rule of Appellate Procedure 20.2 provides the procedures an indigent appellant must follow to obtain the record. *See* TEX.R.APP. P. 20.2.

> Within the time for perfecting the appeal, an appellant who is unable to pay for the appellate record may, by motion and affidavit, ask the trial court to have the appellate record furnished without charge. If after hearing the motion the court finds that the appellant cannot pay or give security for the appellate record, the court must order the reporter to transcribe the proceedings.

*Id.*

■ An indigent appellant who desires a free appellate record must: (1) exercise due diligence in asserting his indigence by timely filing the required motion and affidavit; and (2) present evidence to sustain his assertion of indigence in the hearing on the motion. *See Gray v. State*, 928 S.W.2d 561, 562 (Tex.Crim.App.1996); *Abdnor*, 712 S.W.2d at 140–41; *Sparkman v. State*, 55 S.W.3d 625, 632–33 (Tex.App.-San Antonio 2000, no pet.).

The Code Construction Act defines an "affidavit" as "a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office."[1] TEX. GOV.CODE. ANN. § 312.011(1) (Vernon 1998); *see also Vaughn v. State*, 146 Tex. Crim. 586, 590, 177 S.W.2d 59, 61 (1944) (op. on reh'g) ("An affidavit is an oath reduced to writing and sworn to or affirmed before some officer who has lawful authority to administer it.") (quoting *Ex parte Scott*, 133 Tex. 1, 10, 123 S.W.2d 306, 311 (1939)); *State v. Bishop*, 921 S.W.2d 765, 767 (Tex.App.-San Antonio 1996, no pet.) (same); *accord Guinn v. Bosque County*, 58 S.W.3d 194, 198 (Tex.App.-Waco 2001, pet. denied).

The Act provides additional definitions regarding the terms "oath," "affirmation," and "sworn." As this Court stated in *Guinn:*

> The term "oath" includes an "affirmation." The term "sworn" includes that which is "affirmed." Thus, a document can constitute an affidavit if it is "[affirmed] before an officer authorized to administer oaths [or affirmations], and officially certified to by the officer under his seal of office." In either event, an affidavit must be sworn to or affirmed before a third party, and this third party must certify that the maker so swore to or affirmed the statement at issue.
>
> The certification by the third party is known as the "jurat." Without a jurat, a statement is not an "affidavit."

*Guinn*, 58 S.W.3d at 198 (citing TEX. GOV. CODE. ANN. § 312.011(1), (8), (16) (Vernon 1998); *Coastal Cement Sand, Inc. v. First*

---

1. The Government Code lists several officials who have general authority to administer an oath in Texas and certify that the oath was given, including: a judge, retired judge, senior judge, clerk, or commissioner of a court of record; a justice of the peace or a clerk of a justice court; and a notary public. *See* TEX. GOV.CODE. ANN. § 602.002(2)-(4) (Vernon Supp.2002).

*Interstate Credit Alliance, Inc.,* 956 S.W.2d 562, 567 (Tex.App.-Houston [14th Dist.] 1997, pet. denied); *Hall v. Rutherford,* 911 S.W.2d 422, 425 (Tex.App.-San Antonio 1995, writ denied)) (other citations omitted). The Penal Code provides virtually identical definitions for these terms. *See* TEX. PEN.CODE ANN. § 1.07(a)(32), (47) (Vernon 1994) (defining "oath" and "swear").

■ Juxtaposed with the general requirement of an oath or affirmation is the Free Exercise Clause of the First Amendment to the United States Constitution, which prohibits states from promulgating legislation "prohibiting the free exercise" of religion.[2] *See* U.S. CONST. amends. I, XIV, § 1. Article I, section 6 of the Texas Constitution provides the comparable Texas guarantee.[3] *See Tilton v. Marshall,* 925 S.W.2d 672, 677 (Tex.1996) (orig.proceeding); *Hawkins v. Trinity Baptist Church,* 30 S.W.3d 446, 452 (Tex.App.-Tyler 2000, no pet.); *In re Pleasant Glade Assembly of God,* 991 S.W.2d 85, 88 (Tex.App.-Fort Worth 1998, orig. proceeding).

Article I, section 5 of the Texas Constitution makes clear that no person can be prohibited from giving testimony or evidence because of his religious beliefs.

No person shall be disqualified to give evidence in any of the Courts of this State on account of his religious opinions, or for the want of any religious belief, but all oaths or affirmations shall be administered in the mode most binding upon the conscience, and shall be taken subject to the pains and penalties of perjury.

TEX. CONST. art. I, § 5.

The Legislature and the Court of Criminal Appeals have codified this principle. Article 1.17 of the Code of Criminal Procedure has an identical provision. *See* TEX. CODE CRIM. PROC. ANN. art. 1.17 (Vernon 1977). Rule of Evidence 603 provides, "Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so." TEX.R. EVID. 603.

Our research has disclosed only two Texas cases which discuss the interplay of these provisions and their application in a case such as this. *See In re General Elec. Capital Corp.,* 63 S.W.3d 568 (Tex.App.-El Paso 2001, orig. proceeding); *Bisby v.*

---

**2.** The First Amendment in its entirety provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I. The courts refer to the two "religion clauses" of the First Amendment as the Establishment Clause and the Free Exercise Clause. *See Santa Fe Indep. Sch. Dist. v. Doe,* 530 U.S. 290, 302, 120 S.Ct. 2266, 2275, 147 L.Ed.2d 295, 310 (2000); *Williams v. Lara,* 52 S.W.3d 171, 186, 192 (Tex.2001). These clauses apply to the states through the Due Process Clause of the Fourteenth Amendment. *See Doe,* 530 U.S. at 301, 120 S.Ct. at 2275, 147 L.Ed.2d at 310; *Cantwell v. Connecticut,* 310

U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213, 1218 (1940).

**3.** "All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences. No man shall be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent. No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion, and no preference shall ever be given by law to any religious society or mode of worship. But it shall be the duty of the Legislature to pass such laws as may be necessary to protect equally every religious denomination in the peaceable enjoyment of its own mode of public worship." TEX. CONST. art. I, § 6.

*State,* 907 S.W.2d 949 (Tex.App.-Fort Worth 1995, pet. ref'd). Based on these constitutional and statutory provisions, the El Paso court concluded that "the 'so help me God' ending is not an indispensable part of the [anti-bribery] oath" required by article XVI, section 1 of the Texas Constitution. *General Elec. Capital Corp.,* 63 S.W.3d at 570–71.

More pertinent to the present case, the Fort Worth court observed, "When a trial judge is confronted by a witness who refuses on religious grounds to take an oath or an affirmation, the trial judge 'should take reasonable steps to accommodate the witness's beliefs.'" *Bisby,* 907 S.W.2d at 954 (quoting 1 STEVEN GOODE ET AL., TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 603.1 (2d ed.1993)). Professor Goode in turn relied on federal authorities to reach this conclusion. *See* GOODE, *supra* § 603.1 n. 10 (citing *Moore v. United States,* 348 U.S. 966, 75 S.Ct. 530, 99 L.Ed. 753 (1955); *Society of Separationists, Inc. v. Herman,* 939 F.2d 1207 (5th Cir.1991), *rev'd en banc on other grounds,* 959 F.2d 1283 (5th Cir.1992); *Ferguson v. Commissioner,* 921 F.2d 588 (5th Cir.1991); *Gordon v. Idaho,* 778 F.2d 1397 (9th Cir.1985); *United States v. Looper,* 419 F.2d 1405 (4th Cir.1969)).

These federal authorities, as a general matter, strictly construe the oath requirements at issue because "only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion." *Ferguson,* 921 F.2d at 589 (quoting *Wisconsin v. Yoder,* 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15, 25 (1972)); *see also Gordon,* 778 F.2d at 1401 ("flexible approach is consistent with the constitutional obligation to protect the free exercise of religious beliefs by using the least restrictive means to further compelling state interests").

■ In the conduct of such a balancing test, "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Employment Div. v. Smith,* 494 U.S. 872, 887, 110 S.Ct. 1595, 1604, 108 L.Ed.2d 876, 891 (1990) (quoting *Hernandez v. Commissioner,* 490 U.S. 680, 699, 109 S.Ct. 2136, 2148, 104 L.Ed.2d 766, 786 (1989)); *accord Ferguson,* 921 F.2d at 589; *Tilton,* 925 S.W.2d at 678–79; *Pleasant Glade Assembly of God,* 991 S.W.2d at 89. "[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531, 113 S.Ct. 2217, 2225, 124 L.Ed.2d 472, 489 (1993) (quoting *Thomas v. Review Bd.,* 450 U.S. 707, 714, 101 S.Ct. 1425, 1430, 67 L.Ed.2d 624, 631 (1981)). However, an asserted belief can be "so bizarre, so clearly nonreligious in motivation, as not to be entitled to protection under the Free Exercise Clause." *Thomas,* 450 U.S. at 715, 101 S.Ct. at 1431, 67 L.Ed.2d at 632; *Society of Separationists,* 939 F.2d at 1215.

■ In recent years, the Supreme Court has sharply limited the strict scrutiny demanded by *Yoder* and other of its prior First Amendment decisions. Instead, the Court has determined that the Free Exercise Clause "does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Smith,* 494 U.S. at 879, 110 S.Ct. at 1600, 108 L.Ed.2d at 886 (quoting *United States v. Lee,* 455 U.S. 252, 263 n. 3, 102 S.Ct. 1051, 1058 n. 3, 71 L.Ed.2d 127, 136 n. 3 (1982) (Stevens, J., concurring)). Many view *Smith* as a significant retreat from

prior decisions requiring the government to establish a "compelling interest" to justify a law which substantially interfere's with a person's religious beliefs or practices. *See, e.g., id.* at 891–903, 110 S.Ct. at 1606–13, 108 L.Ed.2d at 893–902 (O'Connor, J., concurring); Brian J. Serr, *A Not–So–Neutral "Neutrality:" An Essay on the State of the Religion Clauses on the Brink of the Third Millennium,* 51 BAYLOR L.REV. 319, 321 (1999).

We need not tarry long with the issue of whether *Smith* or the "strict scrutiny" cases apply to Scott's First Amendment claim because Scott's case presents a "hybrid situation" in which his constitutional right to freely exercise his religious beliefs and his constitutional right to freedom of speech are conjoined and because the Texas Legislature has determined that the "compelling interest" test should continue to apply to any government action which "substantially burden[s] a person's free exercise of religion" under the First Amendment.

Regarding the joinder of Scott's free exercise and free speech rights, the Court in *Smith* limited the "compelling interest" test to those cases in which "a neutral, generally applicable law [applied to a] religiously motivated action ... involve[s] not the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections, such as freedom of speech and of the press...." *Smith,* 494 U.S. at 881, 110 S.Ct. at 1601, 108 L.Ed.2d at 887. Scott's case presents this "hybrid situation" because Texas's oath requirement compels him to speak in a manner contrary to his religious beliefs. *See Society of Separationists,* 939 F.2d at 1216 (characterizing such a claim as a "religion-plus-speech" claim).

■ We also note that chapter 110 of the Civil Practice and Remedies Code, entitled "Religious Freedom," preserves the "compelling interest" standard for all government actions which "substantially burden a person's free exercise of religion." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 110.003(a) (Vernon Supp.2002). Such actions are permissible only when "the application of the burden to the person:

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that interest."

*Id.* § 110.003(b). According to section 110.009(b) of this enactment, "The protection of religious freedom afforded by this chapter is in addition to the protections provided under federal law and the constitutions of this state and the United States. This chapter may not be construed to affect or interpret Section 4, 5, 6, or 7, Article I, Texas Constitution." *Id.* § 110.009(b).[4]

Bearing these authorities and principles in mind, we must determine whether Scott properly asserted his indigence and, if so, whether the trial court abused its discretion by refusing to permit Scott or his witnesses to testify.

### FORM OF "AFFIDAVIT"

■ Scott's July 2000 indigence motion qualifies as a prematurely-filed document.[5]

4. The Supreme Court of the United States has declared a similar federal enactment unconstitutional. *See City of Boerne v. Flores,* 521 U.S. 507, 536, 117 S.Ct. 2157, 2172, 138 L.Ed.2d 624, 649 (1997). Nevertheless, state law "may ... be more protective than federal law." *Hulit v. State,* 982 S.W.2d 431, 437 n. 11 (Tex.Crim.App.1998) (quoting Hans A. Linde, *E Pluribus—Constitutional Theory and State Courts,* 18 GA. L.REV. 165, 179 (1984)).

5. Unless a criminal defendant in a non-capital case desires court-appointed counsel or seeks funds to hire an expert witness or secure the

Rule of Appellate Procedure 27.2 permits this Court to "treat actions taken before an appealable order is signed as relating to an appeal of that order and give them effect as if they had been taken after the order was signed." Tex.R.App. P. 27.2; *see also Peacock v. Travelers Prop. Cas. Ins. Co.*, 16 S.W.3d 445, 446 (Tex.App.-Waco 2000, no pet.) (construing similar rule in civil appeal); *State v. Rollins*, 4 S.W.3d 453, 454 n. 1 (Tex.App.-Austin 1999, no pet.) (prematurely-filed notice of appeal in criminal case becomes effective on signing of appealable order); *but see* Tex.R.App. P. 27.1(b) ("a notice of appeal [in a criminal case] is not effective if filed before the trial court makes a finding of guilt or receives a jury verdict."). Thus, under Rule 27.2, Scott's July 2000 indigence motion was timely and took effect after pronouncement of sentence on February 26, 2001.

■ Scott's motion arguably does not satisfy Rule 20.2 because he did not verify it "before an officer authorized to administer oaths." *See* Tex. Gov.Code. Ann. § 312.011(1); *see also Vaughn*, 146 Tex. Crim. at 590, 177 S.W.2d at 61; *Bishop*, 921 S.W.2d at 767. However, we seriously question whether a notary public or other officer authorized to administer oaths would affix his seal to certify that Scott had made the "affidavit" in issue given Scott's refusal to "swear" or "affirm." *See, e.g.*, Tex.R. Evid. 902(10)(b) (suggested form of business records affidavit).[6] For the reasons which follow however, a notary public or other officer authorized to administer oaths ought to certify to the making of a statement such as Scott's. Nevertheless, we cannot ignore the practical reality that most if not all such officials would be extremely reluctant to do so.

Rule of Appellate Procedure 2 provides:

On a party's motion or on its own initiative an appellate court may—to expedite a decision or for other good cause—suspend a rule's operation in a particular case and order a different procedure; but a court must not construe this rule to suspend any provision in the Code of Criminal Procedure or to alter the time for perfecting an appeal in a civil case.

*Id.* 2. The Court of Criminal Appeals has explained the proper operation of Rule 2 thus:

(order adopting uniform rules of evidence). The rule provides for the familiar attestation which reads as follows: "**SWORN TO** AND SUBSCRIBED before me on the _____ day of _____, 19 ___." Tex.R. Evid. 902(10)(b) (emphasis added). This is not a new form. *See* Act of May 15, 1969, 61st Leg., R.S., ch. 353, § 1, 1969 Tex. Gen. Laws 1076, 1076–78 (former Revised Civil Statutes art. 3737e, §§ 7, 8), *repealed by* Act of May 27, 1985, 69th Leg., R.S., ch. 685, § 9, 1985 Tex. Gen. Laws 2472, 2474–75 *and* Order Adopting Texas Rules of Criminal Evidence, 701–702 S.W.2d (Tex. Cases) lxvi-lxvii (Tex.Crim.App.1985) (current version at Tex.R. Evid. 902(10)(b)); *see also Granviel v. State*, 552 S.W.2d 107, 121 (Tex. Crim.App.1976) (affidavit at issue "complie[d] with the recommended form in Art. 3737e, Sec. 7").

---

attendance of a nonresident witness, we can see little other need for filing an indigence affidavit or motion during the course of proceedings in the trial court. *See* Tex.Code Crim. Proc. Ann. arts. 26.04, 35.27 (Vernon Supp. 2002); *De Freece v. State*, 848 S.W.2d 150, 159–60 (Tex.Crim.App.1993) (citing *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)); *Robertson v. State*, 21 S.W.3d 554, 557 (Tex.App.-Waco 2000, pet. ref'd) (same). Scott asserted his indigence in the July 2000 motion for the specific purpose (among others) of obtaining "trial transcripts" without cost.

**6.** The Court of Criminal Appeals adopted the present Rule 902 in 1998. *See Final Approval or Revisions to the Texas Rules of Evidence in Criminal Cases*, 960 S.W.2d (Tex.Cases) xxx-xxxi, lxix-lxxi (Tex.Crim.App. Feb. 25, 1998)

Rule 2(b) is in essence an escape valve to be used by an appellate court when a case becomes unduly stalled or delayed in the appellate process due to procedural rules, and the interests of justice compel speeding up the process. . . .

*Oldham v. State*, 977 S.W.2d 354, 360 (Tex. Crim.App.1998).

■■■ Scott's appeal on the merits has become "unduly stalled" because of this conundrum. As the Court of Criminal Appeals has stated, "[T]he absence of [an appellate record] renders appellant's appeal a 'meaningless ritual.' " *Ward v. State*, 740 S.W.2d 794, 800 (Tex.Crim.App.1987) (quoting *Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 834, 83 L.Ed.2d 821, 828 (1985)). To give effect to Scott's appeal, we apply Rule 2 and excuse Scott from strict adherence to the requirement that his motion be "sworn to before an officer authorized to administer oaths." *See* Tex. Gov.Code. Ann. § 312.011(1); *see also Gordon*, 778 F.2d at 1400 ("The First Amendment's guarantee of the free exercise of religion requires that our procedural rules be interpreted flexibly to protect sincerely-held religious beliefs and practices.").[7]

### Supporting Evidence

Though we will excuse the requirement of a formal jurat, Scott must nonetheless present evidence to support his indigence claim. *See Gray*, 928 S.W.2d at 562; *Abdnor*, 712 S.W.2d at 140–41; *Sparkman*, 55 S.W.3d at 633. Scott attempted to do so, but the trial court refused to allow Scott to testify because he would not state that he was testifying "under penalty of perjury." The issue for us to resolve is whether the trial court reasonably accommodated Scott's religious beliefs as the Free Exercise Clause requires.

■■■ Rule of Evidence 104(a) provides in pertinent part that "[p]reliminary questions concerning the qualification of a person to be a witness ... shall be determined by the court." Tex.R. Evid. 104(a); *see also* Goode, *supra*, § 603.1 ("The sufficiency of a witness's oath or affirmation is a preliminary question to be decided by the court pursuant to Rule 104(a)."). "The rules of evidence afford the court broad discretion in the determination of such questions." *McVickers v. State*, 874 S.W.2d 662, 664 (Tex.Crim.App.1993), *distinguished on other grounds by Granados v. State*, No. 73,525, 2002 Tex.Crim.App. LEXIS 99, —— S.W.3d ——, 2002 WL 922901 (May 8, 2002); *accord Pina v. State*, 38 S.W.3d 730, 736 (Tex.App.-Texarkana 2001, pet. ref'd) ("Such determinations are committed to the trial court's discretion.").

■■■ Accordingly, we review the trial court's ruling under an abuse-of-discretion standard. *See Ortiz v. State*, 834 S.W.2d 343, 347 (Tex.Crim.App.1992) (citing Goode, *supra*, § 702.2); *Pina*, 38 S.W.3d at 736; *Bisby*, 907 S.W.2d at 952–53; *accord Gordon*, 778 F.2d at 1400 ("The court abused its discretion in insisting that Gor-

---

**7.** We do not by this holding intend to excuse every future litigant from the affidavit requirement of Rule 20.2. Notaries public and other officers authorized to administer oaths ought to reasonably accommodate an affiant's religious beliefs. *See Bisby v. State*, 907 S.W.2d 949, 954 (Tex.App.-Fort Worth 1995, pet. ref'd); *see also Society of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1217 (5th Cir.1991), *rev'd en banc on other grounds*, 959 F.2d 1283 (5th Cir.1992); *Ferguson v. Commissioner*, 921 F.2d 588, 590–91 (5th Cir. 1991); *Gordon v. Idaho*, 778 F.2d 1397, 1401 (9th Cir.1985); *United States v. Looper*, 419 F.2d 1405, 1407 (4th Cir.1969). For example, in Scott's case the familiar "SWORN TO AND SUBSCRIBED before me" language could be replaced with "AVOWED TO AND SUBSCRIBED before me," "VERIFIED AND SUBSCRIBED before me," or other similar language.

don use either the word 'swear' or 'affirm' in light of Gordon's sincere religious objections."). We will not reverse unless the ruling lies outside the "zone of reasonable disagreement." *See Burden v. State,* 55 S.W.3d 608, 615 (Tex.Crim.App.2001); *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g); *Flores v. State,* 48 S.W.3d 397, 403 (Tex.App.-Waco 2001, pet. ref'd).

 The courts uniformly agree that the Free Exercise Clause trumps any requirement that a witness give testimony under "oath" if such a requirement violates the witness's religious beliefs. *See Moore,* 348 U.S. at 966, 75 S.Ct. at 531, 99 L.Ed. at 753; *Society of Separationists,* 939 F.2d at 1215–16; *Ferguson,* 921 F.2d at 589–90; *Gordon,* 778 F.2d at 1400–01; *Looper,* 419 F.2d at 1407; *Bisby,* 907 S.W.2d at 954. Following this reasoning, courts have also uniformly concluded that a witness cannot be required to state that he is "affirming" the veracity of his testimony if such a requirement violates his religious beliefs. *See Society of Separationists,* 939 F.2d at 1215–16; *Ferguson,* 921 F.2d at 589–90; *Gordon,* 778 F.2d at 1400–01; *Looper,* 419 F.2d at 1407; *Bisby,* 907 S.W.2d at 954.

 In either situation, a trial court must "take reasonable steps to accommodate the witness's beliefs." *Bisby,* 907 S.W.2d at 954; *accord Society of Separationists,* 939 F.2d at 1217; *Ferguson,* 921 F.2d at 590–91; *Gordon,* 778 F.2d at 1401; *Looper,* 419 F.2d at 1407. To do so, a trial court "should 'strive to devise, in consultation with the witness if necessary, some alternative form of "serious public commitment to answer truthfully that does not transgress the prospect's sincerely held beliefs." ' " *Bisby,* 907 S.W.2d at 955 (quoting GOODE, *supra* § 603.1); *see also* TEX.R. EVID. 603 ("witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered

in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so"); *accord Gordon,* 778 F.2d at 1400 ("any statement indicating that the deponent is impressed with the duty to tell the truth and understands that he or she can be prosecuted for perjury for failure to do so satisfies the requirement for an oath or affirmation"); *Looper,* 419 F.2d at 1407 ("district judge could qualify defendant to testify in any form which stated or symbolized that defendant would tell the truth and which, under defendant's religious beliefs, purported to impress on him the necessity for so doing").

 Article I, section 5 of the Texas Constitution and article 1.17 of the Code of Criminal Procedure require a witness to make his oath or affirmation "subject to the pains and penalties of perjury." TEX. CONST. art. I, § 5; TEX.CODE CRIM. PROC. ANN. art. 1.17. In our view however, this does not equate to a requirement that the witness affirmatively state that he is testifying "under penalty of perjury" if such a statement is contrary to the witness's religious beliefs. As stated by the Fourth Circuit, "the *form* of the administration of the oath *is immaterial,* provided that it involves, in the mind of the witness, the bringing to bear of this apprehension of punishment [for perjury]." *Looper,* 419 F.2d at 1406 (quoting 6 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW, § 1818 (3d ed.1940)).

 To require a witness to affirmatively state that he is testifying "under penalty of perjury" when such a statement is contrary to his religious beliefs would violate the Free Exercise Clause just as much as a requirement that the witness testify under "oath" or "affirmation." *Cf. Moore,* 348 U.S. at 966, 75 S.Ct. at 531, 99 L.Ed. at 753; *Society of Separationists,* 939 F.2d at 1215–16; *Ferguson,* 921 F.2d

at 589–90; *Gordon,* 778 F.2d at 1400–01; *Looper,* 419 F.2d at 1407; *Bisby,* 907 S.W.2d at 954. Instead, the trial court must "take reasonable steps to accommodate the witness's beliefs." *Bisby,* 907 S.W.2d at 954; *accord Society of Separationists,* 939 F.2d at 1217; *Ferguson,* 921 F.2d at 590–91; *Gordon,* 778 F.2d at 1401; *Looper,* 419 F.2d at 1407.[8]

■ Scott declared, "I vow to my heavenly Creator that I will tell the truth and that I will do so under any penalties that are equivalent to the penalties for perjury for those who swear or affirm oaths." This declaration qualified him to testify. The trial court failed to reasonably accommodate Scott's religious beliefs by refusing to accept this declaration. Thus, it abused its discretion. Accordingly, we conclude that Scott's first issue is meritorious.

## APPOINTMENT OF COUNSEL

Scott contends in his second issue that the trial court's improper refusal to allow his witnesses or him to testify resulted in the improper denial of his request for court-appointed counsel on appeal. . The State responds that Scott has not provided a statement or testimony under "oath" as required by article 26.04 of the Code of Criminal Procedure for appointment of counsel. *See* Act of May 30, 1987, 70th Leg., R.S., ch. 939, § 2, 1987 Tex. Gen. Laws 3321, 3322–23 (amended 2001) (current version at TEX.CODE CRIM. PROC. ANN. art. 26.04 (Vernon Supp.2002)) (hereinafter "TEX.CODE CRIM. PROC. ANN. art. 26.04").[9]

■ An indigent criminal defendant has a constitutional right to appointed counsel in a first appeal of right.[10] *See Douglas v. California,* 372 U.S. 353, 356–57, 83 S.Ct. 814, 816–17, 9 L.Ed.2d 811 (1963); *Ex parte Mines,* 26 S.W.3d 910, 913 (Tex.Crim.App.2000). Article 26.04 of the Code of Criminal Procedure sets out the prerequisites an indigent defendant must satisfy for appointment of counsel:

> (c) A defendant who requests a determination of indigency and appointment of counsel shall:
>
> (1) complete under oath a questionnaire concerning his financial resources;
>
> (2) respond under oath to an examination regarding his financial resources

---

8. As the Fourth Circuit noted in *Looper,* Professor Wigmore identified several informal means by which the English courts historically permitted witnesses to make their oaths and affirmations:

 With the sophistication derived from England's role as a world trader, its courts have permitted Chinese to break a saucer, a Mohammedan to bow before the Koran and touch it to his head and a Parsee to tie a rope around his waist to qualify them to tell the truth.

 *Looper,* 419 F.2d at 1407 n. 4 (citing 6 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW, § 1818 (3d ed.1940)).

 The Louisiana Supreme Court has drafted the following statement for persons such as Scott, "I, _____, do hereby declare that the facts I am about to give are, to the best of my knowledge and belief, accurate, correct and complete." *Staton v. Fought,* 486 So.2d 745, 745 (La.1986). Some federal courts have at least tacitly approved this declaration as sufficient to qualify a witness to testify. *See Ferguson,* 921 F.2d at 590; *Kaltenbach v. Breaux,* 690 F.Supp. 1551, 1556 (W.D.La. 1988).

9. The recently-enacted amendments to article 26.04 do not apply to Scott's case. *See* Act of May 24, 2001, 77th Leg., ch. 906, §§ 16, 22, 2001 Tex. Gen. Laws 1800, 1815–16 (amendments apply only to person arrested for crime committed on or after effective date, January 1, 2002).

10. The right to counsel on appeal encompasses a right to effective assistance of counsel on appeal. *See Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821, 830 (1985); *Ex parte Potter,* 21 S.W.3d 290, 297 n. 7 (Tex.Crim.App.2000).

by the judge or magistrate responsible for determining whether the defendant is indigent; or

(3) complete the questionnaire and respond to examination by the judge or magistrate.

(d) Before making a determination of whether a defendant is indigent, the court shall request the defendant to sign under oath a statement substantially in the following form:

"On this _____ day of _____, 19 ___, I have been advised by the (name of the court) Court of my right to representation by counsel in the trial of the charge pending against me. I am without means to employ counsel of my own choosing and I hereby request the court to appoint counsel for me. (signature of the defendant)"

TEX.CODE CRIM. PROC. ANN. art. 26.04(c), (d).

▮▮▮▮ The oath requirement of article 26.04 must be read together with the Free Exercise Clause just as the affidavit requirement of appellate rule 20.2. Thus, we reach the same conclusion regarding Scott's request for appointed counsel as we did regarding his request for a free appellate record. Because the trial court failed to reasonably accommodate Scott's religious beliefs, we conclude that it abused its discretion by refusing to permit him to "respond under oath [or similar statement] to an examination regarding his financial resources." See TEX.CODE CRIM. PROC. ANN. art. 26.04(c)(2). Accordingly, we conclude that Scott's second issue is meritorious.

## CONCLUSION

The issues presented are not commonly seen or easily resolved. The words of the Fifth Circuit in *Society of Separationists* bear repeating:

In holding that [the trial judge] erred, we do not mean to say that he was not courteous and thoughtful.... [T]he Constitutional guarantee of Free Exercise ... is to be watched, policed and rarely if ever trespassed. The judge's duty was to fashion statements of commitment to truth and integrity ... and to do everything that would make for absolute integrity. The [witness] must be able to articulate [his] commitment to [tell the truth and his understanding that he can be prosecuted for perjury if he does not]. The judge had a duty to fashion a statement for the prospective [witness] so that [ ]he could elucidate these concepts. This he failed to do.

We say that what the judge did was error.... Our decision should be understood not as chastisement by any means, but as ... a reminder that the Free Exercise Clause requires something more; here, a back-and-forth interaction designed to elicit positive cooperation from a protesting ... witness.

*Society of Separationists*, 939 F.2d at 1220.

On remand, the trial court may conclude that Scott is or is not indigent. If the court finds that he is not, then Scott may appeal that determination. *See Nelson v. State*, 6 S.W.3d 722, 725–26 (Tex.App.-Waco 1999, order, no pet.). If however the court finds that Scott is indigent, then the court must appoint counsel and direct the court reporter to file the reporter's record in the appeal on the merits without charge. If the court so finds, then it shall cause a supplemental clerk's record to be filed in the appeal on the merits containing a signed, written order or orders to this effect.[11]

---

11. We note that during trial Scott requested funds to hire counsel of his choice. However, an indigent criminal defendant has no constitutional right to court-appointed counsel of his own choosing. *See Dunn v. State*, 819 S.W.2d 510, 520 (Tex.Crim.App.1991); *Red-*

We reverse the order appealed from and remand this cause for further proceedings consistent with this opinion.

---

*dic v. State,* 976 S.W.2d 281, 283 (Tex.App.-Corpus Christi 1998, pet. ref'd). Should Scott be unwilling to accept counsel of the court's choosing, the court must admonish him that his only other choice is to represent himself. In this event, the court must admonish Scott on the record of the dangers and disadvantages of self-representation. *See* TEX. CODE CRIM. PROC. ANN. art. 1.051(g) (Vernon Supp.2002); *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581–82 (1975); *Collier v. State,* 959 S.W.2d 621, 625–26 & n. 8. (Tex.Crim.App. 1997).