**In re PLEASANT GLADE ASSEMBLY OF GOD, Reverend Lloyd A. McCutchen, Rod Linzay, and Holly Linzay.**

No. 2–98–222–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 22, 1998.

Rehearing Overruled Dec. 3, 1998 and June 4, 1999.

Fletcher & Springer, L.L.P. and David M. Pruessner, Dallas, for Relator.

Douglas, Wuester & Disney, P.C. and William O. Wuester, Fort Worth, for Real Parties.

Before CAYCE, C.J., and RICHARDS and BRIGHAM, JJ.

## OPINION

BRIGHAM, Justice.

### INTRODUCTION

In this mandamus proceeding, we are asked to decide whether claims attacking the propriety of a church's actions in casting out demons are barred as violative of the free-exercise clause of the First Amendment. Under the facts of this case, we hold that such claims are barred by this defense.

### BACKGROUND FACTS

For purposes of this proceedings, we are assuming the truth of the following factual allegations. Laura Schubert and her parents Tom and Judy Schubert were members of Pleasant Glade Assembly of God. The Assembly of God religion believes in the literal teachings of the Bible with respect to spirits, demons, demon possession, and the "casting out" of demons. Tom is an ordained Assembly of God minister.

On Friday night, June 7, 1996, seventeen-year-old Laura was at Pleasant Glade with the youth group for an "all-nighter" to prepare for a church-sponsored garage sale. One of the youth, after going to pray in the church sanctuary, stated that he had seen a demon. The youth minister, Rod Linzay, and his wife, Holly, gathered all the youth and told them that demons were trying to get into the church. Rod had the youth find bottles of holy oil and anoint everything in the church in an effort to chase away the demons. All through the night, Rod, Holly, and the youth group prayed and tried to cast the demons out of the church. Finally, at around 4:30 a.m., Rod declared that all of the demons were gone and there was peace. After this all-night experience, the youth then had to work at the garage sale. These events scared Laura and made her stomach hurt.

On Sunday, June 9 at the evening church service, Laura gave testimony to the congregation about the demon experience of Friday night. Laura collapsed at the altar. The youth group was instructed to "pray over" Laura while holding her on the floor, to "rebuke the devil." Laura was then taken to another room where adult church members continued to pray over her. As a result of this event, Laura sustained bruises, scratches, and carpet burns.

On Wednesday, June 12 at the youth meeting, Laura "balled up" in a corner when Rod told the group to find a place to pray. When some of the youth approached her, Laura told them to leave her alone and to not pray for or touch her. Rod and Holly then had the group hold Laura down in a "spread eagle" position and "pray over her." They were telling the Devil to come out of Laura. The senior pastor, Lloyd McCutchen, came in and placed his hand on Laura's head and told her to "just say the word 'Jesus.' " Finally, Laura's parents were called to come pick her up, which they did.

Tom talked with McCutchen as the senior pastor and wrote to him about his concerns regarding these events. The Schuberts withdrew their membership from Pleasant Glade. Tom also contacted the North District Council, the authority that supervises Pleasant Glade in the Assembly of God hierarchy, about the events. The Council decided not to discipline the Linzays, McCutchen, or Pleasant Glade. The Schuberts then sued Pleasant Glade, McCutchen, and the Linzays, raising the following claims:
- false imprisonment
- assault
- battery
- negligence
- gross negligence

- professional negligence
- negligent and intentional infliction of emotional distress [1]
- child abuse and child neglect under the Family Code
- Tom and Judy's loss of Laura's consortium

As the Shuberts' counsel stated at oral argument, their injuries arose out of the entire "course of conduct" from June 7 through 12. The Schuberts served discovery on McCutchen, and McCutchen objected to parts of the discovery based on his First Amendment right to the free exercise of his religion. The Schuberts asserted discovery should be allowed, "including discovery into the area of whether the beliefs of Defendants were sincerely held and whether the practices of the Defendants were outside the religious tenets of the church." [2] Pleasant Glade also filed a motion to dismiss based on its First Amendment defense. The trial court denied both the motion to dismiss and the motion for protective order.

In this mandamus, Pleasant Glade asserts that only the Schuberts' "religious" complaints are barred by its First–Amendment defense. Thus, Pleasant Glade does not argue that the false imprisonment, assault, and battery claims should be protected from the objectionable discovery or dismissed based on the defense.[3]

## AVAILABILITY OF MANDAMUS RELIEF

■ Ordinarily, mandamus relief is not available for immediate relief from interlocutory orders such as the ones we are faced with in this case. However, the Texas Supreme Court has held that although mandamus may not be appropriate in every case in which constitutional rights are impaired, if we determine that Pleasant Glade "raises important issues related to constitutional protections afforded by the First Amendment [that] an appeal cannot adequately protect," mandamus is appropriate. *Tilton v. Marshall,* 925 S.W.2d 672, 682 (Tex.1996) (orig.proceeding); *cf. Tilton v. Moye,* 869 S.W.2d 955, 956, 958 (Tex.1994) (orig.proceeding) (holding discovery request violated freedom of association under the First Amendment and mandamus appropriate).

## FREE EXERCISE AS A DEFENSE TO TORT LIABILITY

■ Article I, Section 6 of the Texas Constitution and the First Amendment of the United States Constitution provide broad protections to the free exercise of religion; however, they do not ipso facto bar all claims that may touch on religious conduct. *See Marshall,* 925 S.W.2d at 677. "[F]reedom to believe may be said to be absolute, freedom of conduct is not and conduct even under religious guise remains subject to regulation for the protection of society." TEX. CONST. art. I, § 6 interp. commentary (Vernon 1997). The United States Constitution also differentiates between the freedom to believe, which is absolute, and the freedom to act, which "remains subject to regulation for the protection of society." *Cantwell v. Connecticut,* 310 U.S. 296, 303–04, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940).[4] Although the free-

1. There is no independent cause of action for negligent infliction of emotional distress in Texas. *See Boyles v. Kerr,* 855 S.W.2d 593, 594 (Tex.1993) (op. on reh'g).

2. According to Tom, in his capacity as an Assembly of God minister, a believer can't be possessed by a demon—they can only be outwardly oppressed by a demon; thus, the attempts to exorcize Laura were incorrect because she was a believer.

3. Thus, any reference to the Schuberts' "claims" in the remainder of this opinion will not include false imprisonment, assault, or battery.

4. Because Pleasant Glade does not address the *Tucci* or *Edgewood* factors in its brief regarding any differences between the Texas and United States Constitutions on this issue, we need not decide whether or not the Texas Constitution affords broader protection to religion and may assume that the state and

dom to act is subject to regulation, this regulation only burdens purely secular activities that are nonreligious in motivation. *See, e.g., Marshall,* 925 S.W.2d at 679 (fraudulent misrepresentations that Tilton would perform concrete acts) (plurality op.); *Jones v. Trane,* 153 Misc.2d 822, 591 N.Y.S.2d 927, 930 (N.Y.1992) (sexual misconduct of priest); *Strock v. Pressnell,* 38 Ohio St.3d 207, 527 N.E.2d 1235, 1238 (1988) (minister had affair with plaintiff's wife while they were seeing minister for marital counseling); *Hester v. Barnett,* 723 S.W.2d 544, 559 (Mo.Ct.App.1987) (minister spread false accusations after family counseling); *Christofferson v. Church of Scientology,* 57 Or.App. 203, 644 P.2d 577, 601–02 (1982) (fraudulent misrepresentations that had a wholly secular basis), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1196, 75 L.Ed.2d 439 (1983). We must decide whether the Schuberts' claims are barred by the First Amendment.

■ We find that the Shuberts' claims would involve a searching inquiry into Assembly of God beliefs and the validity of such beliefs, an inquiry that is barred by the First Amendment. Their claims involve not only the appropriateness of attempting to cast demons out of Laura, but they also involve how the Linzays' and McCutchen's prayers and comments about demons from June 7 to June 12 affected Laura. Whether they negligently or intentionally misapplied church doctrine to Laura during these events is not a justiciable controversy. *See Baumgartner v. First Church of Christ, Scientist,* 141 Ill. App.3d 898, 96 Ill.Dec. 114, 490 N.E.2d 1319, 1326 (1986), *cert. denied,* 479 U.S. 915, 107 S.Ct. 317, 93 L.Ed.2d 290 (1986).

■ Deciding whether McCutchen and the Linzays acted negligently, including their negligence per se claim based on Chapter 261 of the Family Code, would require an impermissible inquiry into whether they deviated from the standard of care of an ordinary Assembly of God

federal free exercise guarantees are coextensive. *See Marshall,* 925 S.W.2d at 677 n. 6.

practitioner. *See Perry v. S.N.,* 973 S.W.2d 301, 306 (Tex.1998) (op. on reh'g) (holding when conduct that is also governed by common-law duty is criminalized by statute, standard of conduct is usually common-law reasonableness); *Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 921 (Tex.1998) (holding gross negligence includes an examination of the events and circumstances from the viewpoint of the defendant at the time the events occurred, without viewing the matter in hindsight). Regarding negligent and intentional infliction of emotional distress, the First Amendment gives Pleasant Glade the right to engage in driving out demons—intangible or emotional harm cannot ordinarily serve as a basis for maintaining a tort cause of action against a church for religious practices. *See Marshall,* 925 S.W.2d at 681; *Paul v. Watchtower Bible & Tract Soc'y,* 819 F.2d 875, 883 (9 th Cir.) (holding claim of intentional infliction of emotional distress after church officially "shunned" member could not stand), *cert. denied,* 484 U.S. 926, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987). Also, the Schuberts' loss of consortium allegation is derivative of their other claims, which impermissibly look into whether church doctrine was negligently or intentionally misapplied as to Laura, and subject to the First–Amendment defense. *See Whittlesey v. Miller,* 572 S.W.2d 665, 666 n. 1 (Tex.1978); 5 Texas Torts & Remedies § 82.03[1] (J. Hadley Edgar, Jr. & James B. Sales eds., 1998).

Additionally, all of the Schuberts' claims would involve an improper discussion of whether Laura was a true Assembly of God "believer" and, thus, exempt from any type of exorcism. *See Baumgartner,* 96 Ill.Dec. 114, 490 N.E.2d at 1324 (holding allegation of improper healing barred by First Amendment). In fact, Tom asserts in his affidavit that McCutchen and the Linzays never should have tried to cast demons *out* of Laura because she was a believer and, under church doctrine, could not be possessed by demons. Further

strengthening Pleasant Glade's position is the fact that the First–Amendment defense based on the free-exercise clause is particularly likely to succeed where, as here, the plaintiffs were or had been members of the religious group involved. *Cf. Hester,* 723 S.W.2d at 559 (stating decision that claims not barred by First Amendment rested on fact that Hesters were not members of the religion). *See generally* Alan Stephens, Annotation, *Free Exercise of Religion Clause of First Amendment as Defense to Tort Liability,* 93 A.L.R. Fed. 754, 774–77 (1989).

Thus, the complained-of conduct is inexorably intertwined with Pleasant Glade's religious beliefs, and any inquiry into the appropriateness of the conduct would necessarily involve an inquiry into the legitimacy of the underlying religious beliefs. This violates the First Amendment, which bars such claims. *See Murphy v. I.S.K.Con. of New England, Inc.,* 409 Mass. 842, 571 N.E.2d 340, 346–48, 350 (1991) (holding First–Amendment defense applies if claim cannot stand in absence of testimony regarding church's religious beliefs), *cert. denied,* 502 U.S. 865, 112 S.Ct. 191, 116 L.Ed.2d 152 (1991). Accordingly, any discovery relating to these matters would likewise be barred as irrelevant. *See Marshall,* 925 S.W.2d at 682–83.

## CONCLUSION

Because the challenged claims would necessarily require an inquiry into the exact beliefs of Pleasant Glade and how they should have been applied to Laura, the First–Amendment defense applies, and the Schuberts' "religious" claims are barred. As such, any discovery regarding these claims would be barred. Accordingly, the trial court abused its discretion in denying Pleasant Glade's motion for protective order and motion to dismiss. These facts raise important issues related to constitutional protections afforded by the First Amendment that would be inadequately protected by an appeal; thus, mandamus is appropriate. We conditionally grant a writ of mandamus and will issue it only if the trial court fails to grant Pleasant Glade's June 5, 1998 motion to dismiss and motion for protective order regarding the Schuberts' claims for negligence, gross negligence, professional negligence, negligent and intentional infliction of emotional distress, child abuse and child neglect under the Family Code, and loss of Laura's consortium.

RICHARDS, J., concurs without opinion.