IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0916
════════════
 
Pleasant Glade Assembly of 
God, Reverend Lloyd A. McCutchen,
Rod Linzay, Holly Linzay, Sandra 
Smith,
Becky Bickel, and Paul 
Patterson, Petitioners,
 
v.
 
Laura Schubert, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Second District of 
Texas
════════════════════════════════════════════════════
 
 
Argued April 12, 
2007
 
 
            
Chief Justice Jefferson, 
joined by Justice Green, and by Justice Johnson as to Parts II-A, III, 
and IV, dissenting.
                                                                                                            

            
After today, a tortfeasor need merely allege a religious motive to 
deprive a Texas court of jurisdiction to compensate his 
fellow congregant for emotional damages. This sweeping immunity is inconsistent 
with United States Supreme Court precedent and extends far beyond the 
protections our Constitution affords religious conduct. The First Amendment 
guards religious liberty; it does not sanction intentional abuse in religion’s 
name. Because the Court’s holding precludes recovery of emotional damages—even 
for assault and other serious torts—where the defendant alleges that the 
underlying assault was religious in nature, I respectfully dissent.
 
I
            
Ironically, much of my analysis mirrors that found in Pleasant Glade’s 
earlier plea to the court of appeals. See, e.g., infra note 9. In its 
successful petition for a writ of mandamus, Pleasant Glade conceded that 
Schubert’s claim for assault, battery, and false imprisonment presented a 
“‘secular controversy’ and does not come within the protection of the First 
Amendment. That is, no church or pastor can use the First Amendment as an excuse 
to cause bodily injury to any person.” In the subsequent appeal, the court of 
appeals held that Pleasant Glade, having received mandamus relief to exclude 
religious references at trial, was precluded from raising a First Amendment 
defense that it had quite purposefully abandoned. 174 S.W.3d 
388, 407. The Court holds that it is not. In light of the Court’s 
ultimate dismissal for want of jurisdiction, however, I find the Court’s 
protracted discussion of judicial estoppel puzzling. Subject-matter jurisdiction 
cannot be conferred by estoppel, Van Indep. Sch. Dist. v. McCarty, 165 S.W.3d 351, 354 (Tex. 2005), or waiver, Tellez v. City of Socorro, 
226 S.W.3d 413, 414 (Tex. 2007), so the estoppel issue would seem, 
technically, beyond the Court’s reach.[1] The Court has nevertheless expounded on 
this question, and because the Court errs in its analysis, I offer a brief 
rejoinder. 
            
The Court states that Pleasant Glade is not judicially estopped from 
making its First Amendment arguments because, among other reasons, “the asserted 
inconsistency did not arise in a prior proceeding, but in this same case,” __ 
S.W.3d __, __, and “[c]ontradictory positions taken in 
the same proceeding . . . do not invoke the doctrine of judicial estoppel,” 
id. at __. That characterization misses the 
mark. The United States Supreme Court recently discussed the policy 
considerations underlying judicial estoppel and the rationale behind the 
requirement that parties succeed in a prior proceeding:
 
[C]ourts regularly inquire whether the party has succeeded in 
persuading a court to accept that party’s earlier position, so that judicial 
acceptance of an inconsistent position in a later proceeding would create the 
perception that either the first or the second court was misled. Absent 
success in a prior proceeding, a party’s later inconsistent position introduces 
no risk of inconsistent court determinations, and thus poses little 
threat to judicial integrity.
 
New 
Hampshire v. Maine, 532 U.S. 742, 750-51 (2001) (citations 
omitted) (emphasis added). This Court’s formalistic conception of “prior 
proceedings” will fail to capture many situations that implicate these concerns. 
If a party obtains mandamus relief from this Court by taking one position and 
then wins a judgment, also from this Court, as part of the same suit and based 
on the opposite contention, this no less creates the “perception that either the 
first or the second court was misled” and presents the “risk of inconsistent 
court determinations” than if the mandamus proceeding had originated from a 
different action. Id. The appropriate test to determine 
if there has been a prior proceeding for the purposes of judicial estoppel is 
whether the court has made a ruling—or “determination”—on the issue. Id. Thus, 
parties would be able to reverse course before the court has ruled, but could be 
bound by their previous position once successful (and if the other elements of 
judicial estoppel are present).[2]
            
Although I agree, for the reasons discussed below, see infra n. 
12, that Pleasant Glade is not estopped under these facts, the Court arrives at the estoppel question 
improvidently and reaches a conclusion that will limit Texas courts’ ability to 
preserve judicial integrity.
II
A
The rights 
contained in the Free Exercise and Establishment Clauses are among our most 
cherished constitutional freedoms. As broad as these protections are, I agree 
with the Court that “‘under the cloak of religion, persons may [not], with 
impunity,’ commit intentional torts upon their religious adherents.” __ 
S.W.3d at __ (quoting Cantwell v. Connecticut, 310 
U.S. 296, 306 (1940)). Unfortunately, 
this is precisely what the Court’s holding allows. Here, assuming all facts 
favorable to the verdict, members of Pleasant Glade restrained Schubert on two 
separate occasions against her will. During the first encounter, seven members 
pinned her to the floor for two hours while she cried, screamed, kicked, 
flailed, and demanded to be released. This violent act caused Schubert multiple 
bruises, carpet burns, scrapes, and injuries to her wrists, shoulders, and back. 
As she testified, “I was being grabbed by my wrists, on my ankles, on my 
shoulders, everywhere. I was fighting with everything I had to get up, I was 
telling them, no. I was telling them, let go, leave me alone. They did not 
respond at all.” After Schubert “complied with what they wanted [her] to do,” 
she was temporarily released. Fifteen minutes later, at the direction of 
Pleasant Glade’s youth pastor, a different group of seven church members 
physically restrained her for an hour longer. After this experience, Schubert 
was “weak from exhaustion” and could hardly stand.
            
Three days later, a male church member approached Schubert after a 
service and put his arm around her shoulders. At this point, Schubert was still 
trying to figure out “what had happened” at the previous incident, “wasn’t 
interested in being touched,” and resisted him. As Schubert testified, “I tried 
to scoot away from him. He scooted closer. He was more persistent. Finally, his 
grasp on me just got hard . . . before I knew it, I was being grabbed again.” 
Eight members of Pleasant Glade then proceeded to hold the crying, screaming, 
seventeen year-old Schubert spread-eagle on the floor as she thrashed, 
attempting to break free. After this attack, Schubert was unable to stand 
without assistance and has no recollection of events immediately afterward. On 
both occasions, Schubert was scared and in pain, feeling that she could not 
breathe and that “somebody was going to break [her] leg,” not knowing “what was 
going to happen next.”
            
The jury found that petitioners assaulted and falsely imprisoned 
Schubert, and the trial court rendered judgment for her on the false 
imprisonment claim. Although this case presents an unusual set of facts, 
involving physical restraint not proven to be part of any established church 
practice, at its core the case is about secular, intentional tort claims 
squarely within our jurisdiction, and I believe the Court errs in dismissing for 
want thereof. I will address each of the Court’s arguments in turn. First, the 
Court states that because Schubert’s “proof at trial related solely to her 
subsequent emotional or psychological injuries,” her “case at trial then was not 
significantly different from what she would have presented under her claim of 
intentional infliction of emotional distress . . . [a] type of claim [that] 
would necessarily require an inquiry into the truth or falsity of religious 
beliefs that is forbidden by the Constitution.” __ S.W.3d at __ (citations 
omitted). As an initial matter, this is factually inaccurate. Schubert testified 
that she suffered physical as well as emotional injuries from the 
assaults. Furthermore, the jury awarded damages for unsegregated past “physical pain and mental anguish.” 
Pleasant Glade did not request that the damages be segregated, and so waived any 
complaint that her physical injuries were not compensable. Tex. R. Civ. P. 274.
            
More importantly, the Court’s allusion to intentional infliction of 
emotional distress fails to explain how submitting Schubert’s emotional damages 
claim would “require an inquiry into the truth or falsity of religious beliefs,” 
“embroil this Court in an assessment of the propriety of . . . religious 
beliefs,” or “decid[e] issues of religious doctrine.” 
__ S.W.3d at __, __, __ (citations omitted). In Tilton v. Marshall, 925 
S.W.2d 672, 682 (Tex. 1996), we held that intentional infliction of emotional 
distress claims based on insincere religious representations and breached 
promises to read, touch, and pray over tithes and prayer requests were barred by 
the First Amendment. We explained:
 
One of the 
elements that a plaintiff must prove to establish intentional infliction of 
emotional distress is that the conduct was "so outrageous in character, and so 
extreme in degree, as to go beyond all possible bounds of decency, and to be 
regarded as atrocious, and utterly intolerable in a civilized community." With 
regard to religious representations, we conclude that no conscientious fact 
finder would make such a determination without at least considering the 
objective truth or falsity of the defendants' beliefs, regardless of what 
evidentiary exclusions or limiting instructions were attempted. After all, the 
outrageousness and extremity of a representation is, under almost any 
circumstance, aggravated by being false or mitigated by being true.
 
 
925 S.W.2d at 681. This case is not like Tilton. False 
imprisonment does not require a showing of outrageous conduct.[3] Evaluating whether Pleasant Glade falsely 
imprisoned Schubert does not require the factfinder to 
determine “the objective truth or falsity of the defendants’ belief,” id., 
and neither does awarding her emotional damages. It is a basic tenet of tort 
law that emotional damages may be recovered for intentional torts involving 
physical invasions, such as assault, battery, and false imprisonment. 
See, e.g., Dillard Dep’t Stores, Inc. v. Silva, 148 S.W.3d 370, 
374 (Tex. 2004) (affirming award of mental anguish damages for false 
imprisonment); Fisher v. Carrousel Motor Hotel, Inc., 424 S.W.2d 627, 630 
(Tex. 1967) ("Personal indignity is the essence of an action for battery."); 
Davidson v. Lee, 139 S.W. 904, 907 (Tex. Civ. 
App.—Galveston 1911, writ ref’d) (“The rule that 
damages cannot be recovered for mental suffering unaccompanied by physical 
injury is not applicable when the wrong complained of is a willful one intended 
by the wrongdoer to wound the feelings and produce mental anguish and suffering, 
or from which such result should be reasonably anticipated, as a natural 
consequence.”); Restatement (Second) of 
Torts, § 905 cmt. c (1965) (“The principal 
element of damages in actions for battery, assault or false imprisonment . . . 
is frequently the disagreeable emotion experienced by the plaintiff.”); W. Page Keeton et al., Prosser and Keeton on 
Torts § 11 (5th ed. 1984) (“Since the injury [resulting from false 
imprisonment] is in large part a mental one, the plaintiff is entitled to 
damages for mental suffering, humiliation, and the like.”); 20 William V. Dorsaneo III, Texas Litigation 
Guide § 331.06 (2007) (“Mental suffering caused by a false imprisonment, 
including humiliation, shame, fright, and anguish, is also compensable, 
regardless of whether any physical harm was inflicted on the plaintiff.”); 
cf. Boyles v. Kerr, 855 S.W.2d 593, 597–98 (Tex. 1993) (“Our 
decision [that there is no general duty not to negligently inflict emotional 
distress] does not affect a claimant’s right to recover mental anguish damages 
caused by defendant’s breach of some other legal duty . . . . We also are not 
imposing a requirement that emotional distress manifest itself physically to be 
compensable.”) (emphasis added) (citations omitted). This is common sense: many 
experiences—including some sexual assaults and certain forms of torture—are 
extremely traumatic yet result in no serious physical injury.
            
Given this, it is not surprising that the Court cites no case holding 
that the First Amendment bars claims for emotional damages arising from assault, 
battery, false imprisonment, or similar torts. I can cite a case, heavily relied 
upon by the Court, for the opposite proposition: Tilton. There we held 
that “[t]he Free Exercise Clause never has immunized clergy or churches from all 
causes of action alleging tortious conduct,” and cited 
Meroni v. Holy Spirit Association for the 
Unification of World Christianity, 119 A.D.2d 200 (N.Y. App. Div. 1986), 
with the parenthetical “‘[A] church may be held liable for intentional tortious conduct on behalf of its officers or members, even 
if that conduct is carried out as part of the Church’s religious practices.’” 
Tilton, 925 S.W.2d at 677. The Court cites 
Cantwell v. Connecticut, 310 U.S.at 310, for 
the proposition that “intangible harms” are “insufficient to impose civil or 
criminal liability.” __ S.W.3d at __. The Cantwell Court
, however, found in 
that case “no assault or threatening of bodily harm, no truculent bearing, no 
intentional discourtesy, no personal abuse,” and made clear that “violence and 
breaches of the peace,” such as occurred in this case, may be punished. 
Cantwell, 310 U.S. at 310. The Court also discusses 
Paul v. Watchtower Bible & Tract Society of New York, Inc., 819 F.2d 
875 (9th Cir. 1987), but that case rested on the fact that “[n]o physical 
assault or battery occurred.” Paul, 819 F.2d at 
883. Similarly, in Westbrook v. Penley, we cited the “[n]o 
physical assault” language from Paul and stated that the act at issue was 
not “an intentional tort that endangered Penley’s or 
the public’s health or safety.” 231 S.W.3d 389, 404 
(Tex. 
2007).[4]
            
I agree with the Court that certain claims for emotional damages are 
barred by the First Amendment—if Schubert were merely complaining of being 
expelled from the church, she would have no claim in the civil courts. But 
again, this case, as it was tried, is not about beliefs or “intangible harms”—it 
is about violent action—specifically, twice pinning a screaming, crying teenage 
girl to the floor for extended periods of time. That was how it was presented to 
the jury, which heard almost nothing about religion during the trial due 
to the trial court’s diligent attempt to circumvent First Amendment problems and 
to honor the court of appeals’ mandamus ruling that neither side introduce 
religion as a reason for Laura’s restraint.[5] Indeed, the trial court told the jury at 
the beginning of the case that “the Court of Appeals, the appellate courts, have 
instructed us that we don’t get into spiritual matters because it would violate 
the [E]stablishment [C]lause 
of the First Amendment of the Constitution,” and later repeated this 
instruction. That the Court looks to a dictionary for evidence of Pleasant 
Glade’s beliefs and practices is proof of the trial court’s success in keeping 
religion out of the courtroom. See __ S.W.3d at __, n. 2. Thus, the 
Court’s assertion that assessing emotional damages against Pleasant Glade for 
engaging in these religious practices “would . . . embroil this Court in an 
assessment of the propriety of those religious beliefs” is belied by the conduct 
of this very case: Schubert testified that she was “grabbed” after collapsing 
due to illness; Pleasant Glade contested that version of events without 
reference to demons, “laying of hands,” or other religious subjects, __ S.W.3d 
at __; and the jury was able to award damages without considering—or even being 
informed of—Pleasant Glade’s beliefs.[6]
            
Further, although the Court chooses to conduct its own inquiry into the 
role of “laying hands” in Pleasant Glade’s religion,[7] and attempts to limit its holding by 
stating that “religious practices that threaten the public’s health, safety, or 
general welfare cannot be tolerated,” and thus that there may be some cases in 
which emotional damages are available as a consequence of religiously motivated 
conduct, __ S.W.3d at __, any religious motivation Pleasant Glade may have had 
is irrelevant to our consideration. The tort of false imprisonment is a 
religiously neutral law of general applicability, and the First Amendment 
provides no protection against it. Employment Div. v. Smith, 494 
U.S. 872, 879 (1990) (“[T]he right of 
free exercise does not relieve an individual of the obligation to comply with a 
valid and neutral law of general applicability on the ground that the law 
proscribes (or prescribes) conduct that his religion prescribes (or 
proscribes).") (citations omitted); Moses v. Diocese 
of Colo., 863 P.2d 310, 320 (Colo. 1993) (“Application of a secular 
standard to secular conduct that is tortious is not 
prohibited by the Constitution.”). The Smith Court emphatically rejected 
the proposition that the First Amendment alone—without being coupled to another 
constitutional protection, such as the freedom of speech, the press, or to 
direct the education of one’s children, 494 U.S. at 
881—“could excuse [an individual] from compliance,” id. at 879, with a general applicable law:
 
Laws . . . 
are made for the government of actions, and while they cannot interfere with 
mere religious belief and opinions, they may with practices. . . . Can a man 
excuse his practices to the contrary because of his religious belief? To permit 
this would be to make the professed doctrines of religious belief superior to 
the law of the land, and in effect to permit every citizen to become a law unto 
himself.
 
Id. at 879 (quoting Reynolds v. 
United States, 
98 U.S. 145, 166–67 (1878)).[8]
            
To be clear, even if it had been proven at trial that Pleasant Glade’s 
religion demanded that Schubert be restrained, the First Amendment would provide 
no defense—we simply need not evaluate the validity of Pleasant Glade’s 
religious beliefs, or even inquire into the assailants’ motives, to hold 
Pleasant Glade liable for its intentionally tortious 
conduct.[9] And while the Court suggests that 
imposing this liability would have a “chilling effect” on the church’s beliefs, 
__ S.W.3d at __, constitutional protection for illegal or tortious conduct cannot be bootstrapped from the protection 
of beliefs where it does not otherwise exist. Further, the 
Court’s threat to “health, safety, or general welfare” test for liability for 
religiously motivated acts is almost identical to the “substantial threat to 
public safety, peace or order” language from Sherbert v. Verner, 
374 U.S. 398, 403 (1963). In 
Smith, however, the Court expressly rejected the application of Sherbert, which developed out of an unemployment 
compensation case, to “generally applicable prohibitions of socially harmful 
conduct.” Smith, 494 U.S. at 885.[10]
            
And even under the Court’s erroneous standard, it is hard to see why this 
case would not qualify. The torts of false imprisonment and assault both have 
substantially similar criminal analogs, see Tex. Penal Code §§ 20.02 (“Unlawful 
Restraint”), 22.01 (“Assault”), and it cannot be seriously argued from this 
record that Pleasant Glade’s conduct did not threaten Schubert’s welfare. It is 
difficult to determine what would meet the Court’s standard, not least 
because the Court offers no analysis beyond its declaration that “this is not 
such a case.” Finally, the Court hints that it might have found liability here 
if Schubert had been a passerby, but that “religious practices that might offend 
the rights or sensibilities of a non-believer outside the church are entitled to 
greater latitude when applied to an adherent within the church.” __ S.W.3d at __. There is a kernel of truth in this 
statement, but the Court’s formulation is imprecise and overbroad. Members of 
religious groups routinely and impliedly consent to a variety of faith-based 
practices. Accordingly, implied consent could, in many circumstances, extend to 
physical encounters like baptisms and to other practices congregants embrace as 
part of their faith. And perhaps this type of implied consent could, in some 
circumstances, extend to being pinned to the floor for hours at a time despite 
the member’s explicit, contemporaneous withdrawal of consent. That question is 
not before us today, however. Consent is a question of fact—indeed, lack of consent is an element of false imprisonment 
on which we have an affirmative jury finding in this case. Pleasant Glade did 
not challenge that finding at the court of appeals, and does not raise it here. 
Nevertheless, the Court treats church membership as an across the board buffer 
to tort liability.[11] The problems with this approach are 
obvious. It is impossible to apply the Court’s standard in the absence of 
factual development or determination in the trial court. We are in no position 
to decide that the ordeal to which Schubert was subjected was so “expected” and 
“accepted by those in the church” as to overcome Schubert’s vehement denial of 
consent at the time of the incidents. __ S.W.3d at __. 
Further, the scant evidence does not support the Court’s conclusion. Senior 
Pastor McCutchen, in his affidavit quoted by the 
Court, speaks of “lay[ing] hands” and of church 
members “faint[ing] into semi-consciousness, and 
sometimes l[ying] down on the 
floor of our church.” Id. 
at __. This is far removed from the incident described by Schubert, 
which we must take as true even if Pleasant Glade had properly raised this 
issue, City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005) 
(“[L]egal-sufficiency review in the proper light must 
credit favorable evidence if reasonable jurors could, and disregard contrary 
evidence unless reasonable jurors could not.”), and lends no credence to the 
Court’s consent theory.
B
To the extent 
that this case presents any First Amendment problems, I believe they lie in the 
fact that Schubert was traumatized not only by the false imprisonment viewed in 
isolation, but also by the religious content of that experience. Thus, because 
one of Schubert’s experts, Dr. Helge, testified as to 
the whole of Schubert’s mental anguish, the jury may have awarded damages 
stemming in part from the religious nature of the events in question. __ S.W.3d at __. This is prohibited by the First Amendment. 
Paul, 819 F.2d at 883. As discussed above, 
however, the general rule in Texas is that plaintiffs may recover mental 
anguish damages resulting directly from certain types of intentional torts, 
including false imprisonment. Thus, the difficulty in this type of hybrid case 
lies in separating the wheat from the chaff.
            
The Court solves this dilemma not by extracting the religious from the 
secular, but by binding them together and then dismissing the case for lack of 
jurisdiction. I would, instead, treat Pleasant Glade’s First Amendment argument 
as an affirmative defense that must be raised at trial. See Tex. R. Civ. P. 94; cf. Tilton, 
925 S.W.2d at 677 (“[W]hen a plaintiff's suit implicates a defendant’s free 
exercise rights, the defendant may assert the First Amendment as an affirmative 
defense to the claims against him.”). A jury could then be instructed to award 
damages only for the mental anguish the plaintiff would have suffered had the 
tort been committed by a secular actor in a secular setting. Juries are 
frequently asked to exclude certain sources of injury—in this case religious 
sources—when calculating damages, and this procedure would allow plaintiffs’ 
secular claims to go forward while protecting defendants’ First Amendment 
rights. See Comm. on Pattern Jury 
Charges, State Bar of Tex., Texas 
Pattern Jury Charges—General Negligence & Intentional Personal Torts 
PJC 8.7 (2006) Personal Injury Damages—Exclusionary Instruction for Other 
Condition (“Do not include any amount for any condition not resulting 
from the occurrence in question”) (emphasis original), & cmt. (“If it would add clarity in the individual case, an 
instruction not to consider specific, named . . . conditions would be proper, if 
requested.”); see also id. at PJC 8.8 Personal 
Injury Damages—Exclusionary Instruction for Preexisting Condition That Is 
Aggravated, 8.9 Personal Injury Damages—Exclusionary Instruction for Failure to 
Mitigate. Further, if the case is tried without reference to religion, making an 
exclusionary instruction potentially confusing or prejudicial, the trial court could in these situations include a proximate 
cause question, which includes an element of foreseeability. See id. at 
PJC 2.4 Proximate Cause (“[T]he act or omission complained of must be such that 
a person using ordinary care would have foreseen that the event, or some similar 
event, might reasonably result therefrom.”) (emphasis omitted). Thus, the jury (not being aware of any 
religious aspect of the case) would find only damages reasonably connected to 
the secular assault.
            
Pleasant Glade, however, did not request any such instruction, and this 
omission bars relief.[12] See Tex. R. Civ. P. 278 (“Failure to submit 
a definition or instruction shall not be deemed a ground for reversal of the 
judgment unless a substantially correct definition or instruction has been 
requested in writing and tendered by the party complaining of the judgment.”). 
Further, while the Court points to Dr. Helge’s 
testimony as proof that Schubert’s religious and secular damages are 
inextricably intertwined, another expert, Dr. Millie Astin, specifically stated that she could separate 
the two. And Schubert testified that while she was being restrained she was 
afraid she "was being injured" and that she "might die"—trauma clearly 
associated with the act of restraint itself. Although segregating the religious 
from the secular may sometimes be difficult, it can and should be done. See 
Jones v. Wolf, 443 U.S. 595, 604 (1979).
III
Because I 
would not dismiss for lack of jurisdiction, I would address Pleasant Glade’s 
argument that the trial court erred in allowing expert testimony on, and 
recovery for, Schubert’s diagnosis of posttraumatic stress disorder. However, 
because the other evidence of Schubert’s mental anguish, including “angry 
outbursts, weight loss, sleeplessness, nightmares, hallucinations, 
self-mutilation, fear of abandonment, and agoraphobia,” 174 S.W.3d at 393, is 
sufficient to support the jury’s award, I cannot say that the error, if any, 
“probably caused the rendition of an improper judgment.” Tex. R. App. P. 61.1(a); Nissan Motor Co. v. Armstrong, 145 
S.W.3d 131, 144 (Tex. 2004). It is 
therefore not necessary to consider Pleasant Glade’s claims in any detail.
IV
Pleasant 
Glade also contends that the trial court erred in refusing to submit their in 
loco parentis defense to the jury, and that the 
First Amendment required a finding of actual malice to support the jury’s award 
of mental anguish damages. In a cross petition for review, Schubert argues that 
the court of appeals erred in concluding there was no evidence to support a 
finding that Laura’s loss of earning capacity was foreseeable and proximately 
caused by Pleasant Glade’s conduct. I agree with the court of appeals’ 
conclusions on these issues.
V
The Court 
today essentially bars all recovery for mental anguish damages stemming from 
allegedly religiously motivated, intentional invasions of bodily integrity 
committed against members of a religious group. This overly broad holding not 
only conflicts with well-settled legal and constitutional principles, it will 
also prove to be dangerous in practice. Texas courts have been and will continue to be 
confronted with cases in which a congregant suffers physical or psychological 
injury as a result of violent or unlawful, but religiously sanctioned, acts. In 
these cases, the Court’s holding today will force the lower courts to deny the 
plaintiff recovery of emotional damages if the defendant alleges that some 
portion thereof stemmed from the religious content of the experience—unless the 
trial court is able to anticipate that the case will fall under the Court’s 
rather vague exception. See __ S.W.3d at __ (“[W]e can imagine 
circumstances under which an adherent might have a claim for compensable 
emotional damages as a consequence of religiously motivated conduct.”).
            
I would affirm the court of appeals’ judgment. Because the Court instead 
dismisses the case for lack of jurisdiction, I respectfully dissent.
 
____________________________
                                                                                    
Wallace B. Jefferson
                                                                                    
Chief Justice
 
OPINION 
DELIVERED:     June 27, 2008     
 
 
            

 







[1] 
The fact that “[judicial estoppel] is not strictly speaking estoppel but rather 
is a rule of procedure”, __ S.W.3d __, does not affect this analysis. See 
Wilmer-Hutchins Indep. Sch. 
Dist. v. Sullivan, 51 S.W.3d 293, 294–95 (Tex. 2001) (“A party cannot by his own conduct 
confer jurisdiction on a court when none exists otherwise.”). 

[2] 
Courts have the option of reversing their previous determination rather than 
invoking judicial estoppel, thus holding the party to the second of its 
inconsistent arguments rather than the first. See New 
Hampshire, 532 U.S. at 750 (“Because the rule is 
intended to prevent improper use of judicial machinery, judicial estoppel is an 
equitable doctrine invoked by a court at its discretion.”) (citations omitted).

[3] 
The elements of intentional infliction of emotional distress are: “(1) the 
defendant acted intentionally or recklessly; (2) the conduct was extreme and 
outrageous; (3) the defendant’s actions caused the plaintiff emotional distress; 
and (4) the emotional distress that the plaintiff suffered was severe.” City of Midland v. O’Bryant, 18 S.W.3d 209, 216 (Tex. 2000). The 
elements of false imprisonment, on the other hand, are “(1) willful detention; 
(2) without consent; and (3) without authority of law." Wal-Mart Stores, Inc. v. Rodriguez, 
92 S.W.3d 502, 506 (Tex. 2002). 

[4] 
In contrast, the tort of intentional infliction of emotional distress was 
developed because it was thought that extreme and outrageous conduct should be 
actionable despite the lack of a physical invasion or another otherwise 
tortious act, and is sometimes criticized because 
it compensates plaintiffs for mental anguish not naturally flowing from such 
an act, which may be mere speech. See Restatement (Second) of Torts, § 46 
cmt. b (1965) (“[E]motional 
distress may be an element of damages in many cases where other interests have 
been invaded, and tort liability has arisen apart from the emotional distress. 
Because of the fear of fictitious or trivial claims, distrust of the proof 
offered, and the difficulty of setting up any satisfactory boundaries to 
liability, the law has been slow to afford independent protection to the 
interest in freedom from emotional distress standing alone. It is only within 
recent years that the rule stated in this Section has been fully recognized as a 
separate and distinct basis of tort liability, without the presence of the 
elements necessary to any other tort, such as assault, battery, false 
imprisonment, trespass to land, or the like.”) (emphasis added).

[5] 
In order to reach the conclusion that “the religious practice of ‘laying hands’ 
and church beliefs about demons are [] closely intertwined with Laura’s tort 
claim,” the Court quotes testimony on Pleasant Glade’s religious beliefs and 
practices that the jury did not hear, and references claims made in Schubert’s 
original, unamended petition, __ S.W.3d at __, which 
was filed before Pleasant Glade’s successful mandamus petition, In re 
Pleasant Glade Assembly of God, 991 S.W.2d 85, 87-88 (Tex. App.—Fort Worth 
1998, orig. proceeding). Schubert subsequently amended her petition, and the 
live pleading in this case makes reference to neither “exorcism” nor “the 
Devil.” 

[6] 
As discussed below, I think it possible that some of Schubert’s emotional 
damages stemmed from protected religious speech and should not have been 
awarded. Pleasant Glade failed to preserve error on this point, however, and the 
Court errs in holding all of Schubert’s damages—some of which certainly 
resulted from the restraint itself—barred. See infra Part II.B. 


[7] 
In reaching the conclusion that “the act of ‘laying hands’ is infused in 
Pleasant Glade’s religious belief system,” __ S.W. 3d at __, the Court engages 
in the unconstitutional conduct it purports to avoid: “deciding issues of 
religious doctrine.” Id. at __; 
see Employment Div. v. Smith, 494 U.S. 872, 887 
(1990) (“Repeatedly and in many different contexts, we have warned that courts 
must not presume to determine the place of a particular belief in a religion or 
the plausibility of a religious claim.”).

[8] 
The Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. §§ 
2000bb-2000bb-4, purported to overrule Smith by requiring a compelling 
state interest to substantially burden a person’s religious practice. See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 424 
(2006). Although the Court cites Tilton for support, Tilton 
did not consider the application of Smith because Tilton was 
decided before RFRA was held to be beyond Congress’s legislative authority to 
enact with respect to the states in City of Boerne v. Flores, 521 U.S. 
507 (1997). See Tilton, 925 S.W.2d at 676 n.5 (noting 
that various courts had held RFRA constitutional). Thus, insofar as 
statements in Tilton conflict with Smith, they should no longer be 
considered authoritative.

[9] 
Even Pleasant Glade realizes this fundamental principle of First Amendment law. 
Its petition for writ of mandamus stated:
 
[Schubert] alleges that she was physically grasped, 
taken and held on the floor of the church against her will. This was allegedly 
done as part of an “exorcism” in an alleged attempt to exorcise a demon from 
her. However, this religious context is actually irrelevant. Since Laura 
Schubert alleges she was held on the floor against her will, she brings claims 
for assault, battery, and false imprisonment. This is a “bodily injury” claim . 
. . Relators, the church and the pastors, concede that 
this is a “secular controversy” and does not come within the protection of the 
First Amendment. That is, no church or pastor can use the First Amendment as an 
excuse to cause bodily injury to any person . . . .
 
* * *
 
If this were the sum total of this dispute, Relators would not be here before this Court . . . No 
religious beliefs would be implicated. The First Amendment and the free exercise 
of religion would simply not be an issue. 
 
__ S.W.3d at __. Although the Court somehow concludes from this 
statement that “Pleasant Glade viewed the Schuberts' 
claims of emotional damages as religious in nature,” it is plain from the text 
that the Church made no such distinction. And Pleasant Glade was correct not to 
do so: no religious beliefs are implicated by awarding Schubert mental anguish 
damages suffered as a result of her false imprisonment. But cf. infra 
note 12.

[10] The Court cites Sands v. Living Word 
Fellowship, 34 P.3d 955, 958 (Alaska 2001), for the proposition that 
“religious conduct must not pose ‘some substantial threat to public safety, 
peace or order.’” __ S.W.3d at __. This language is taken from Sherbert by way of Frank v. State, 604 P.2d 
1068, 1070 (Alaska 1979), and the Sands court did 
not analyze the effect of Smith on its precedent.

[11] While the Court cites Smith v. Calvary 
Christian Church, 614 N.W.2d 590, 593 (Mich. 2000), that case is clearly inapposite. 
There, the plaintiff “explicitly consented in writing to obey the church’s law,” 
id., and, in any case, the court specifically reserved the question of 
whether its reasoning would extend to church discipline “in violation of the 
Michigan Penal Code,” id. at 595.

[12] Even under my view of judicial estoppel, 
Pleasant Glade would not be estopped from arguing that the jury improperly 
awarded mental anguish damages stemming from the religious implications of the 
incident, which I interpret to be consistent with the position it took in its 
mandamus petition.